**Kristi HUTTO, a minor, By and Through Trudy HUTTO, her mother and next friend, Appellant,**

v.

**Robert ROGERS and Joann Rogers, Respondents.**

No. 68670.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 9, 1996.

Thomas Patrick Deaton, Springfield, for appellant.

J. Ronald Carrier, Prosecuting Attorney, Robert V. Franson, Asst. Prosecuting Attorney, Greene County, Springfield, for respondent.

Theodore F. Schwartz, Kenneth R. Schwartz, Clayton, for appellant.

Gerard T. Noce, Frans J. von Kaenel, St. Louis, for respondents.

AHRENS, Presiding Judge.

In this personal injury action, plaintiff Kristi Hutto, a minor, by and through her mother and next friend, Trudy Hutto appeals the trial court's grant of summary judgment for defendants Robert and Joann Rogers. We affirm in part, reverse in part, and remand for further proceedings.

On appeal from summary judgment, we "review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Our review of summary judgment is "essentially *de novo*" and the nonmovant is given the benefit of all reasonable inferences. *Id.* It is unnecessary to defer to the decision of the trial court because summary judgment is an issue of law and the appellate court is presented with the same record as was viewed by the trial court. *Id.* Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Rule 74.04(c)(3).

The facts, viewed in the light most favorable to plaintiff, are as follows:

Plaintiff temporarily moved into defendants' house while her parents, Robert and Trudy Hutto, were living in England where her father was stationed with the United States Navy. Defendant Joann Rogers, plaintiff's aunt, was to provide guidance and supervision of plaintiff. In return, plaintiff's parents paid defendants $150.00 per month to cover plaintiff's expenses. The Huttos provided plaintiff with an additional amount of money each month to cover school, clothing and other expenses. Plaintiff also performed household tasks for defendants and drove defendants' children to various activities.

The room plaintiff slept in, an addition to defendants' house, was built in 1989. On October 31, 1993, the room caught fire while plaintiff was sleeping causing ·severe burns and scars over her face, head, neck, shoulders and hands. Plaintiff also suffered severe damage to her lungs and respiratory system, severe and permanent damage to her nervous system, and emotional stress.

The addition contained an electric space heater which allegedly caused the fire and plaintiff's resulting injuries. Defendants ac-

quired the space heater from an aunt's estate five to seven years before the fire occurred. The heater was used in the addition and other parts of the house during cold months and was stored in the garage during warm months. When stored in the garage, the heater was placed under a table and was not wrapped or protected. When Mr. Rogers returned the heater to the house each year, he looked at it but did not inspect the wires for rodent damage nor did he disassemble it or test it with an electrical device.

Plaintiff's expert William Bridges believed the fire started at either the space heater's plug or the electrical outlet because he found no other possible causes through his inspection or investigation. Plaintiff's expert Ronald Gronemeyer, the chief investigator for the City of St. Louis Fire Department, was first consulted on January 16, 1994, two and one-half months after the fire. Mr. Gronemeyer opined the fire originated at the space heater's plug. Both of plaintiff's experts believe the original plug on the space heater had been replaced. Mr. Rogers testified that the replacement plug must have been installed before he acquired the space heater. According to Gronemeyer, the replacement plug was not "capable of providing the current for the heater." As a result, resistance heating occurred at the connection of the wire to the plug, causing the ignition. Gronemeyer testified in his deposition that the evidence at the scene supported his opinion the fire ignited internally within the plug and power cord, rather than externally.

Gronemeyer was unsure whether a thorough visual inspection of the replacement plug would have revealed any defects in it. He suggested the only signs of defect prior to the fire would have been an odor or heat generation at the plug connection. He concedes that a defect in the plug connection could have been revealed by a thorough visual inspection but says he was unaware of anything that would have put Rogers on notice of a problem with the heater before the fire.

■ Plaintiff's first point on appeal asserts several errors by the trial court. First, plaintiff contends the court erred in failing to decide whether plaintiff was a licensee or an invitee. Judge Sweeney, the trial judge in this case, wrote the following in his order granting defendants' motion for summary judgment:

> No matter whether Plaintiff in this case is characterized as an invitee or a licensee, any standard of care owed to her by the Defendants for a dangerous condition in their home is conditioned upon proof that Defendants knew or should have known that the space heater posed an unreasonable risk of harm to Plaintiff Kristi Hutto.

The trial court's judgment did not ignore the licensee-invitee distinction,[1] as plaintiff suggests. Judge Sweeney simply stated that plaintiff did not present summary judgment facts showing the dangerous condition under either status. Thus, there was no need to reach the issue of plaintiff's status. The court did not err in failing to determine plaintiff's status as licensee or invitee. We note, however, that the court implicitly applied the duty owed to an invitee, because it is the higher standard of care.

■ Plaintiff also asserts in her first point that the trial court improperly determined an issue which was a question for the jury when it implicitly held the facts of the case were not sufficient to alert a reasonable person of the need to investigate the existence of hidden dangers. Plaintiff believes that in applying the "reasonable person standard" the court determined an issue which was a question for the jury.

In *Carter v. Kinney*, an opinion relied upon by both parties, the Missouri Supreme Court held plaintiff's status is a question of law and "summary judgment is appropriate if the defendants' conduct conforms to the standard of care [plaintiff's] status imposes on

---

1. Within the past year, the Missouri Supreme Court has declined an invitation to abolish the licensee-invitee distinction and has affirmatively stated the distinction is alive and well in Missouri. *Carter v. Kinney*, 896 S.W.2d 926, 928–929 (Mo. banc 1995). "Under Missouri law, the duty of care owed a visitor by an owner or possessor of land is governed by the status of the visitor as invitee, licensee, or trespasser." *Anderson v. Accurso*, 899 S.W.2d 938, 941 (Mo. App.1995).

them." *Carter,* 896 S.W.2d at 928. The Supreme Court found no disputed facts regarding whether defendants had conformed to the standard of care imposed on them, and thus affirmed the trial court's grant of summary judgment. *Id.* at 929. Consequently, unless there are disputed facts to be resolved by the jury, it is appropriate for the court to enter summary judgment upon a finding that a defendant has conformed to the standard of care imposed on defendant. It is well within the power of the trial court to enter summary judgment when there are no factual issues for the jury.

Plaintiff also contends that even if the trial court could apply the reasonable person standard, a genuine issue of material fact exists regarding defendants' negligence and thus, the court's grant of summary judgment was erroneous. Missouri courts have adopted Restatement (Second) of Torts § 343 (1965) when determining a possessor's liability to an invitee. *Harris v. Niehaus,* 857 S.W.2d 222, 226 (Mo. banc 1993). The first of three elements required to establish liability under § 343 is that the possessor "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees." Restatement (Second) of Torts § 343(a) (1965).

In arguing the material facts are disputed as to defendants' knowledge of the dangerous condition and need for defendants to investigate further, plaintiff relies heavily on three facts: (1) Gronemeyer's deposition testimony that touching the power cord could have revealed a problem; (2) Robert Rogers' deposition testimony that he stored the heater unprotected in his garage during the summer; and (3) Rogers' testimony that he made no inspection of the heater before returning it to the house.[2]

When Gronemeyer was asked the extent of investigation he recommended for a space heater being used and stored in the same way defendants' heater was used and stored, Gronemeyer recommended simply taking a look at the heater and the plug. Robert Rogers stated he looked at the heater before moving it from the garage to the house. Gronemeyer also said it is impossible to tell how long the defect existed before the fire. Gronemeyer stated he was not aware of any evidence that would have put defendants on notice of a defect in the plug, prior to the fire. He went on to say there was nothing to alert defendants of the defect prior to the fire other than an odor or heat generation at the plug. Gronemeyer stated that once the resistance heating began, heat would be generated at the connection between the plug and the wire. He believed the heat would be evident to anyone touching the plug. Plaintiff, who was in the best position to notice an odor or heat because the heater was in her bedroom, reported she had not had any problems with any plugs, outlets or "electrical work" in her room. Mr. Rogers testified that before returning the heater to the house, he visually inspected it and specifically looked for brittle portions of the wire.

After carefully reviewing all of the summary judgment facts, we find no genuine dispute as to defendants' knowledge or notice of need to investigate further.

A possessor is not an absolute insurer of the safety of his invitee. In addition, a possessor is not held liable for an injury caused by a defect in the premises of which he had no actual knowledge, even though it might have been revealed if he had made an investigation or inspection, unless the situation suggests an investigation and the facts are such as to indicate to a reasonably prudent [person] the likelihood of the existence of some hidden danger to persons lawfully on his property. *Medows v. Brockmeier,* 863 S.W.2d 675, 676–77 (Mo.App.1993). The summary judgment facts do not show that defendants knew of any defect in the heater. Nor is there any showing that the situation suggested an investigation and that the facts were such as to indicate to a reasonably prudent person the likelihood of the existence of some hidden danger to persons lawfully on the property. For these reasons, we conclude there was no genuine issue of material fact as to the first element of a negligence cause of action under

---

**2.** Although plaintiff relies on other facts, those facts relate to Count II of the petition which is not an issue under plaintiff's first point and therefore will not be discussed here.

either § 342 or § 343 of the Restatement (Second) of Torts. Therefore, the trial court's grant of summary judgment on Count I of plaintiff's petition was proper. Point one is denied.

In her second point, plaintiff contends the trial court erroneously sustained defendants' motion for summary judgment as to the negligence per se issue because defendants did not properly move for summary judgment on Count II of plaintiff's petition. Defendants argue that summary judgment on Count II was proper, regardless of the trial court's reasoning, because plaintiff's response failed to create any genuine issue of fact as to the materiality or legal effect of the ordinances upon which she based her claim. We do not reach the issue of whether summary judgment is appropriate on Count II because it is not properly before us. Defendants' argument ignores the requirements of Rule 74.04, which sets out the form and procedures for summary judgment.

The rule allows parties to move for summary judgment as to "all or any part of the pending issues." Rule 74.04(a). It also requires that:

> Motions for summary judgment shall state with particularity in separately numbered paragraphs each material fact as to which the movant claims there is no genuine issue, with specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts.

Rule 74.04(c)(1).

Defendants' motion for summary judgment made a general request for judgment without specifying that the motion applied to one or both counts of plaintiff's petition. Such a request appears to move for summary judgment on all pending issues. However, the factual allegations made by defendants relate only to Count I of plaintiff's petition. If we assume for the purpose of argument that defendants moved for summary judgment on the entire action, then defendants failed to state "each material fact as to which [they claim] there is no genuine issue" because they did not allege facts relevant to Count II

in the motion. *See* Rule 74.04(c)(1). For this reason, defendants' motion for summary judgment is insufficient as to Count II of plaintiff's petition. "In order for a trial court to grant summary judgment, it must normally[3] have a motion for summary judgment before it." *Williams v. Mercantile Bank of St. Louis*, 845 S.W.2d 78, 82 (Mo.App.1993). Defendants' insufficient motion as to Count II has the same effect as if no motion were filed regarding that count. Plaintiff had no obligation to respond to any issues related to Count II since defendants did not move for summary judgment on those issues. Therefore, the trial court erred in granting summary judgment on Count II of plaintiff's petition because the issue was not properly raised by defendants' motion. Point two is granted.

We affirm the trial court's grant of summary judgment as to Count I of plaintiff's petition, reverse the trial court's entry of summary judgment on Count II and remand for further proceedings consistent with this opinion.

PUDLOWSKI and SIMON, JJ., concur.

---

3. In certain instances, a court may treat a motion to dismiss as a motion for summary judgment. *See Y.G. v. Jewish Hospital of St. Louis,* 795 S.W.2d 488, 494 (Mo.App.1990).