**Alice ROBERTS, et al., Appellants,**

v.

**BJC HEALTH SYSTEM, d/b/a BJC Healthcare, et al., Respondents.**

**No. SC 92700.**

Supreme Court of Missouri, En Banc.

Jan. 29, 2013.

Rehearing Denied March 19, 2013.

Sanford J. Boxerman, S. Todd Hamby, Sheila Greenbaum and Gary R. Sarachan, Capes, Sokol, Goodman & Sarachan PC, Charles S. Kramer and Randall D. Grady, Riezman Berger PC, St. Louis, for the patients.

Allen D. Allred and Lawrence Friedman, Thompson Coburn LLP, Stephen J. O'Brien, SNR Denton U.S. LLP, Andrew Rothschild and Evan Z. Reid, Lewis, Rice & Fingersh LC, Paul N. Venker, Lisa A. Larkin and Michael R. Barth, Williams, Venker & Sanders LLC, Michael A. Fisher and Susan Nell Rowe, The Stolar Partnership LLP, St. Louis, for the healthcare defendants.

MARY R. RUSSELL, Judge.

A group of plaintiffs sued a number of health services providers, alleging that they were victims in a fraudulent billing scheme. The circuit court found that the plaintiffs had not shown that they were damaged by the health services providers' alleged wrongdoing, and it entered judg-

ment in favor of the providers. This Court affirms.

## I. Background

Alice Roberts, Kevin Hales, and Christy and Tim Millsap (collectively Plaintiffs) brought suit against multiple health services providers (collectively Defendants). Plaintiffs allege that they were victims in a scheme of improper surgical billing by Dr. Richard Coin and his business, Reconstructive Microsurgery Associates (RMA).[1] Plaintiffs Roberts and Hales and the Millsaps' child were treated by Dr. Coin, and their respective treatments were provided at the facilities of the other defendants. Improper coding[2] of Dr. Coin's surgical procedures led to allegedly fraudulent overcharges being billed to Roberts' and Hales' employers' workers' compensation insurers and to the Millsaps' private health insurance company. Plaintiffs were not billed for the alleged overcharges, as the treatment billings were sent directly from the providers to Plaintiffs' respective insurers.[3] But, prior to their medical treat-

ments, Plaintiffs had entered into contracts with their respective providers to be personally liable for any treatment costs not covered by insurance or other third-party payors.

RMA and Dr. Coin pleaded guilty to federal charges related to creating billing overcharges by using improper coding. Plaintiffs later brought suit, asserting that they were harmed by the overcharges scheme.

Initially, plaintiffs Roberts and Hales brought suit against Defendants—on their own behalf and as representatives of a purported class—alleging that they were damaged by Defendants' overcharging the costs of their treatments to their employers' workers' compensation insurers.[4] This initial petition was dismissed without prejudice, and Plaintiffs' claims for fraud and for violations of the Missouri Merchandising Practices Act ("MMPA") were refiled in a new petition, which included the Millsaps and which modified the class definition that was sought.[5]

---

1. Defendants include BJC Health System d/b/a BJC Healthcare, Missouri Baptist, Sisters of Mercy Health System, St. John's Mercy Health System d/b/a St. John's Mercy Medical Center, and RMA.

2. The overcharging scheme involved miscoding treatment charges by "upcoding" the charges, fabricating the charges, or "unbundling" the charges to result in the appearance of more expensive treatments than were actually performed.

3. Workers' compensation carriers were billed directly for and paid for the costs of treatment for plaintiffs Roberts and Hales. The Millsaps paid a $75 co-pay for their child's treatment, but their private insurer was billed the remainder of the costs related to the alleged overcharges.

4. Plaintiffs Roberts and Hales initially filed a 26–count suit against Defendants in circuit court. The counts included challenges to Defendants' credentialing of physicians (spe-

cifically Dr. Coin), alleged improper and fraudulent coding and billing for health care services, and coding and billing oversight duties. The case was successfully removed by defendant St. John's to the federal court *on the basis of possible preemption by the* Employee Income Retirement Security Act of 1974 (ERISA).

5. The modified petition removed "entities" from the class language, which effectively removed the insurance companies that had paid Plaintiffs' claims from inclusion in this suit.

Defendants again removed the case to federal court. Plaintiffs argued against removal by stating that they were not pursuing claims on behalf of third-party health plans or insurance companies.

Defendants moved to dismiss Plaintiffs' case. Their arguments included that Plaintiffs lacked standing to bring their suit because they had not suffered any injury-in-fact because of the alleged overcharges. Defendants stressed that Plaintiffs' medical insurers

Defendants moved for summary judgment, arguing that Plaintiffs lacked standing and could not show that they suffered any injury-in-fact or damages that were necessary to the proof of their claims.[6] The circuit court granted summary judgment in favor of Defendants on all claims. It found that Plaintiffs had failed to present any evidence that they had suffered damages because of Defendants' alleged overcharges. The circuit court noted that Defendants classified Plaintiffs' failure to show damages as relevant to the issue of standing to sue, but it articulated that it was making its findings as a matter of Plaintiffs' "failure of proof of damages." It stated that suit against Defendants for the alleged overcharges could be properly brought by "someone who has actually been injured." The circuit court additionally rejected Plaintiffs' arguments that the collateral source rule or subrogation principles applied to their case to establish their ability to proceed with their claims.

Plaintiffs appeal.[7]

## II. Standard of review

 Appellate review of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is viewed in the light most favorable to the party against whom judgment was entered. *Id.*

 Summary judgment is appropriate when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* A defendant can establish that he is entitled to summary judgment by showing: (1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense. *Id.* at 381. A summary judgment, like any trial court judgment, can be affirmed on appeal by any appropriate theory supported by the record. *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 664 (Mo. banc 2010).

## III. Summary judgment was proper

### A. Standing

 As an initial matter, this Court addresses Plaintiffs' arguments that summary judgment was not proper on the basis that they lacked standing. This Court notes that the circuit court did not base its judgment on findings related to

---

or other third parties, not Plaintiffs themselves, had been billed for and paid the costs of the alleged overcharges.

The federal court dismissed Plaintiffs' case for failure to establish standing under article III of the United States Constitution and failure to demonstrate an injury-in-fact that was likely to be addressed by a favorable decision. Ultimately, however, the federal court amended its order of dismissal to remand the case to the state court. Defendants were unsuccessful in their federal appeal of the decision.

**6.** For example, defendant BJC argued that it was entitled to summary judgment for the claims brought by plaintiff Hale because he

was never billed for any alleged overcharges and was protected by section 287.140.13(1), RSMo Supp.2011, from being billed for treatments covered by workers' compensation. BJC contended that Hale had no standing in this matter and had no damages and no injuries-in-fact. The other defendants argued similarly that summary judgment was proper because Plaintiffs did not show that they had suffered any damages.

**7.** Jurisdiction is vested in this Court pursuant to Missouri Constitution article V, section 10, as this case was transferred after disposition by the court of appeals.

Plaintiffs' standing in this case but rather expressly articulated that its decision was based on Plaintiffs' failure of proof of damages. Nonetheless, standing remains in debate among the parties. When standing is questioned, this Court must determine the issue of standing before examining the substantive issues in the case, as a lack of standing would require dismissal. *See Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. banc 2002).

A party bringing litigation establishes standing by showing a personal stake in the litigation that arises from a "threatened or actual injury." *State ex rel. Williams v. Mauer*, 722 S.W.2d 296, 298 (Mo. banc 1986). A party establishes standing by showing a "legally cognizable interest in the subject matter [of the litigation] and [by showing] that he has a threatened or actual injury." *E. Mo. Laborers Dist. Council v. St. Louis Cnty.*, 781 S.W.2d 43, 46 (Mo. banc 1989). The essence of standing is that the party seeking relief has a "personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." *Ste. Genevieve Sch. Dist. R–II v. Bd. of Aldermen of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002). Plaintiffs must show they have "some legally protectable interest in the litigation so as to be directly and adversely affected by its outcome." *Id.*

Considering the standards for establishing standing, this Court finds that Plaintiffs have sufficiently demonstrated that they have standing in this action. Plaintiffs' assertions of their *potential liability* for the alleged overcharges demonstrate a *legally cognizable interest* in this litigation and a *threatened injury*. Establishing standing by showing such a threatened injury, however, does not establish that Plaintiffs established the requisite damages element necessary for their claims to survive summary judgment.

## B. Damages

Summary judgment was warranted because establishing damages was an essential element of Plaintiffs' claims, and they did not show that they suffered any damages. *See Hoffman v. Union Elec. Co.*, 176 S.W.3d 706, 707 (Mo. banc 2005) ("A defendant may establish a right to summary judgment by showing that the plaintiff is unable to produce sufficient evidence to establish one or more of the essential elements of the plaintiff's claim."). Plaintiffs concede that they have not suffered an injury-in-fact or damages by way of being billed for any overcharges. Instead, Plaintiffs ask this Court to declare that they have established damages by showing that they have *potential liability* for their treatment costs because they contracted to pay any costs not paid by their insurers. They argue that *legal liability for potential damages* is sufficient to survive Defendants' motions for summary judgment.

This Court, however, is not persuaded by Plaintiffs' assertions that they suffered damages merely by entering an agreement to pay if their insurers did not. On the facts here, Plaintiffs' insurers were billed for and paid the alleged overcharges, and Plaintiffs' *potential* liability remained a speculative harm that did not materialize.[8] Plaintiffs seek to recover monies for alleged overcharges that they did not pay and would not have to pay if Defendants

8. Although the dissent speculates that Plaintiffs could be sued by their insurers to recover the alleged overcharges that the insurers paid, summary judgment is granted on the facts of this case, where their insurers did pay all the charges, not on a hypothetical future scenario where that was not the case.

improperly charged them.[9] This Court agrees with the circuit court that Plaintiffs cannot proceed with claims to "recover money that incontrovertibly they never lost." *Cf. Freeman Health System v. Wass,* 124 S.W.3d 504, 506–09 (Mo.App. 2004) (finding that plaintiffs' claims failed where they failed to show that they had suffered "an ascertainable loss of money or property").

### C. The collateral source rule

 Plaintiffs further contend that the trial court erred in determining that they did not suffer damages because that finding is a violation of the collateral source rule. Application of the collateral source rule prevents an alleged tortfeasor from attempting to introduce evidence at trial that the plaintiff's damages will be covered, in whole or in part, by the plaintiff's insurance or another source. *See Smith v. Shaw,* 159 S.W.3d 830, 832 (Mo. banc 2005). The collateral source rule expresses the policy that a wrongdoer should not enjoy reduced liability because the person he harmed was protected from expenditures by insurance coverage or by payment from another source. *See id.*

Plaintiffs contend that the collateral source rule prevented the circuit court in this case from considering, when it was measuring Plaintiffs' damages, that the alleged overcharges were paid by Plaintiffs' insurers and not by Plaintiffs. Plaintiffs argue that, because the collateral source rule would prevent the introduction of evidence about the insurer-paid payments at trial, the court should not consider those payments when considering damages for summary judgment purposes.

Plaintiffs' arguments, however, are not persuasive. In this case, there was no collateral source of payments to Plaintiffs for their damages, as Plaintiffs did not suffer damages. The circuit court did not err in determining that the collateral source rule is inapplicable in this case, as the rule cannot create damages for Plaintiffs where none existed.

### D. Subrogation and assignment

 As a final matter, this Court addresses Plaintiffs' arguments regarding subrogation and assignment. Plaintiffs acknowledge that their insurers actually paid the alleged overcharges, but they contend that their insurers' remedy (to collect any overcharges that they paid) is to seek subrogation from a judgment awarded to Plaintiffs.

Plaintiffs reject the notion that the claims at issue in this case could be pursued by their insurers. They stress that the relationship between a patient and health services provider is the relationship under which the alleged overcharges occurred. They contend that their insurers are merely "derivative" parties, as they have a relationship with Defendants only through their relationship with Plaintiffs. Plaintiffs maintain that insurers are akin

---

9. This Court notes that plaintiffs Roberts and Hales are protected from possible financial liability for their injuries covered by workers' compensation, as section 287.140.13(1), RSMo Supp.2011, prevents health care providers from billing workers' compensation claimants for their treatment costs. Section 287.140.13(1) provides in relevant part:

> No ... health care provider, other than a ... health care provider selected by the employee at his own expense ... shall bill or attempt to collect any fee or any portion of a fee for services rendered to an employee due to a work-related injury or report to any credit reporting agency any failure of the employee to make such payment, when an injury covered by this chapter has occurred and such hospital, physician or health care provider has received actual notice given in writing by the employee, the employer or the employer's insurer....

to billing agents for patients, as the patients remain ultimately liable for their treatment costs. Plaintiffs argue that a patient's claim against a provider remains with the patient, unless the claim is expressly assigned to an insurer.

 If a claim is "assigned," the assignor gives all the rights of the matter to the assignee, such that an insurer that is "assigned" a claim receives legal title to the claim and the exclusive right to pursue the alleged tortfeasor. *Keisker v. Farmer*, 90 S.W.3d 71, 74 (Mo. banc 2002). In contrast, the insured plaintiff in a subrogation matter retains the legal title to the claim and the insurer pursues a remedy by seeking subrogation from the proceeds recovered by the insured plaintiff's litigation. *Id.*

Contrary to Plaintiffs' assertions, however, subrogation and assignment are not relevant concepts in this case. Here, Plaintiffs never had legal title to any claims related to their insurers' payments for alleged overcharges. The trial court did not err in finding that the insurers were the "owners of any claims" in this case.

## IV. Conclusion

For the foregoing reasons, the circuit court's judgment is affirmed.

FISCHER and STITH, JJ., concur.

TEITELMAN, C.J., dissents in separate opinion filed.

BRECKENRIDGE, J., concurs in opinion of TEITELMAN, C.J.

DRAPER and WILSON, JJ., not participating.

RICHARD B. TEITELMAN, Chief Justice, dissenting.

The principal opinion holds that summary judgment was appropriate because, as a matter of law, the plaintiffs failed to assert a viable damages claim. The opinion concludes that a claim of potential legal liability for medical overbilling fails as a matter of law to state a viable claim for damages because an insurance company paid the bill. I respectfully dissent because, as the plaintiffs allege, they in fact are exposed to potentially crushing legal liability for the fraudulent overbilling of the defendants in this case.

The plaintiffs contracted with the health care providers for medical services. The health care providers billed the plaintiffs, and the plaintiffs' insurance company paid the bill. It then was discovered that the bills reflected fraudulent overcharges. The principal opinion notes that those plaintiffs with private insurance contractually are required to pay any costs not paid by their insurers but assumes that there can be no cognizable damages because the plaintiffs' damages here are purely speculative and did not materialize. This assumes that the plaintiffs' claim of potential damages is simply an absence of damages and begs the question of whether potential liability is sufficient. For purposes of summary judgment analysis, it is just as plausible to characterize the plaintiffs' claim of potential damages as an issue pertaining to the amount of damages sustained as a result of the overbilling. This should be clarified through further litigation.

This is particularly true given the fact that there appears to be nothing preventing the insurance companies from filing suit to recoup the overcharges from the patients. The "voluntary payment doctrine" would not protect the plaintiffs from liability because the health care providers' fraud means that the insurance company's payment was not voluntary. *See Huch v. Charter Communications, Inc.* 290 S.W.3d

721, 726 (Mo. banc 2009) (the voluntary payment doctrine provides that a person cannot recover a voluntary payment made with full knowledge of all the facts in the case and in the absence of fraud). Further, it is likely that any statute of limitation defense the plaintiffs may assert against the insurance company would fail because limitation periods are subject to tolling in cases of fraudulent concealment. Section 516.280, RSMo 2000. If further litigation establishes conclusively that the plaintiffs' claim of potential liability is in fact purely speculative, then an appropriate judgment could be entered at that time. In the meantime, I would allow the case to proceed.