

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| CLYDE WOODALL, | ) | No. ED101777 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 11SL-CC03892 |
| | ) | |
| CHRISTIAN HOSPITAL NE-NW, | ) | Honorable Richard C. Bresnahan |
| | ) | |
| Respondent. | ) | |

## ORDER

The Opinion issued on July 21, 2015 is hereby withdrawn. Respondent's motion for rehearing and application for transfer are denied as moot. New opinion to issue.

SO ORDERED.

Date: _August 25, 2015_

_Patricia L. Cohen_

Patricia L. Cohen, Presiding Judge
Division IV
Missouri Court of Appeals Eastern District

cc:    Todd I. Muchnick
Joshua D. Margolis
Russell L. Makepeace
Joshua S. Davis
Adam S. Johnson



# In the Missouri Court of Appeals
# Eastern District

| | | |
|---|---|---|
| CLYDE WOODALL, | ) | No. ED101777 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 11SL-CC03892 |
| | ) | |
| CHRISTIAN HOSPITAL NE-NW, | ) | Honorable Richard C. Bresnahan |
| | ) | |
| Respondent. | ) | Filed:  August 25, 2015 |

Clyde Woodall ("Appellant") appeals the trial court's grant of summary judgment in favor of Christian Hospital NE-NW ("Respondent") on Appellant's petition alleging Respondent was liable for injuries Appellant suffered while working for an independent contractor, Envirotech, Inc. ("Envirotech"), on a building owned by Respondent.  We affirm in part and reverse and remand in part.

## I.      BACKGROUND

In 2004, Respondent contracted with Envirotech to abate asbestos in Respondent's Northwest Hospital building ("building") to prepare it for demolition.  Appellant was an Envirotech employee working at the building.

Many essential facts are not disputed by the parties.  Asbestos had to be removed from virtually every part of the building.  Because asbestos abatement is highly dangerous and heavily regulated, the abatement work areas needed to be segregated by isolation containment measures to

prevent asbestos fibers from permeating the air in surrounding areas. To contain its costs, Envirotech proceeded in a piecemeal fashion, setting up isolated containment work spaces in particular areas of the building one at a time so the work could be done in sections.

Envirotech began the abatement on the top floor of the building and had discretion over how big to make the initial containment area. Envirotech was not required to obtain Respondent's permission to move the containment area, and the sequence of the work was left to Envirotech's sole discretion. Envirotech referred to the building in its entirety as "the worksite," and Envirotech's employees, including Appellant, had free access to the entire building.

Respondent retained ownership and had the right to be in the building, even though no medical services were being performed. Charles Graeser, Respondent's power plant operator, regularly accessed the boiler room in order to remove some pieces of equipment that had been stored there, using the dock area near the boiler room for ingress and egress. Christopher Dean, Respondent's project manager, visited the building to perform inspections on a weekly basis. Neither Graeser nor Dean was obligated to ask Envirotech for permission to enter the building. Neither Respondent, nor Graeser, nor Dean had authority over Envirotech employees.

Envirotech required electricity to operate its containment equipment and perform the abatement. When abatement began, Respondent furnished electricity to Envirotech through the local electrical utility, Ameren. Sometime after work began, Respondent discontinued the Ameren electrical service and began to provide electricity with a large diesel generator affixed to the outside of the building. Respondent maintained, tested, and operated the generator. During the abatement, the generator experienced numerous technical problems and had to be restarted by Respondent on several occasions. The reasons for the technical problems are disputed by the parties.

During the abatement, Respondent's employees were engaged in removing old equipment from the basement. To facilitate the equipment removal, Respondent's employees repeatedly removed and reinstalled the handrail on the staircase leading to the basement. Graeser testified at his deposition that he knew the rail was removable, that he had removed it and reinstalled it dozens of times, and that it was part of his job to reinstall it if he noticed it was missing.

On September 29, 2004, the worksite experienced a power outage when the generator ceased functioning. At Envirotech's direction, Appellant entered the boiler room in the building's basement to diagnose and fix the power problem. The basement staircase handrail was removed on that day. While on the staircase, Appellant fell and was impaled on the exposed handrail support bracket, sustaining permanent injuries. At the time of the accident, no asbestos was being removed from the boiler room, and as such no isolation containment measures were in that area of the building.

After his fall, Appellant filed a workers' compensation claim. Appellant then filed a five-count petition against Respondent, based on two theories of liability. Appellant first asserted that Respondent was negligent due to a dangerous condition on its premises ("premises liability claim").[1] Appellant's second theory was that Respondent breached a duty in its negligent removal of the handrail and that Respondent breached a duty in negligently providing electrical power to the jobsite ("general negligence claims").[2] Respondent filed a motion for summary judgment, which the trial court granted on all counts. This appeal followed.

---

[1] Appellant pleaded a claim for premises liability in Count I.
[2] Appellant pleaded claims of general negligence in Counts II (general negligence for removing the handrail and exposing the bracket), Count III (general negligence for use of a defective generator), Count IV (general negligence for failure to warn of the defective generator), and Count V (general negligence for failure to use ordinary care and failure to warn for the defective generator).

3

## II.   DISCUSSION

Appellant presents two points on appeal.  In his first point, Appellant asserts the trial court erred in granting summary judgment on his premises liability claim.  In his second point, Appellant argues the trial court erred in granting summary judgment on his general negligence claims.

### A.   Standard of review

Summary judgment is reviewed essentially de novo and affirmed only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).  A defendant may establish summary judgment is appropriate by showing, (1) facts negating any one of the plaintiff's elements necessary for judgment; (2) that the plaintiff has not produced evidence sufficient for the finder of fact to find the existence of one of the plaintiff's elements; or (3) facts necessary to support a properly pleaded affirmative defense.  *Roberts v. BJC Health System*, 391 S.W.3d 433, 437 (Mo. banc 2013).  We review the record in the light most favorable to the party against whom judgment was entered.  *Id.*

### B.   Premises liability

In his first point on appeal, Appellant argues that the trial court erred in granting summary judgment on his premises liability claim.

#### 1.   Duty of care in premises liability claims involving independent contractors

Injuries occurring due to a dangerous condition on a landowner's property are appropriately pleaded in a theory of premises liability.  *Cossey v. Air Systems Intern., Inc.*, 273 S.W.3d 588, 590 (Mo. App. E.D. 2009).  "There are three broad categories of plaintiffs recognized in premises liability cases: (1) trespassers; (2) licensees; and (3) invitees."  *Cook v. Smith*, 33 S.W.3d 548, 552

4

(Mo. App. E.D. 2000).[3]  Here, it is undisputed that Appellant was an invitee at the time of his injury because he was an employee of an independent contractor, Envirotech, who had the permission of the landowner, Respondent, to use the premises.  *Matteuzzi v. Columbus Partnership*, *L.P.*, 866 S.W.2d 128, 132 (Mo. banc 1993) (an employee of an independent contractor who has the landowner's permission to use the premises is an invitee).

For Appellant's premises liability claim, as with any tort claim, Appellant must first establish Respondent owed him a duty of care.[4]  *See L.A.C. ex rel. D.C.v. Ward Parkway Shopping Center Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002) ("[t]ort law focuses on three basic elements: duty, breach and damages"); *see also* 34 MOPRAC 36:2 (4th ed. updated August 2014) (duty is an element of a premises liability action).  "Duty is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court."  *Kopoian v. George W. Miller & Co., Inc.*, 901 S.W.2d 63, 68 (Mo. App. W.D. 1995) (quotations omitted).

Premises liability claims involving injured employees of independent contractors, i.e. invitees, utilize a burden-shifting analysis.  "[T]he general rule [is] that a landowner owes a duty to use reasonable and ordinary care to prevent injury to invitees."  *State ex rel. Union Elec. Co. v. Dolan*, 256 S.W.3d 77, 83 (Mo. banc 2008).  However, contrary to the general rule, a landowner does not owe a duty to invitees if the landowner relinquishes possession and control of the premises

---

[3] Other jurisdictions have abolished the distinction between invitees and licensees for purposes of premises liability. *See Cochran v. Burger King Corp.*, 937 S.W.2d 358, 362 (Mo. App. W.D. 1996).  However, "the Missouri Supreme Court has declined an invitation to abolish the licensee-invitee distinction and has affirmatively stated the distinction is alive and well in Missouri."  *Hutto By and Through Hutto v. Rogers*, 920 S.W.2d 112, 114 n.1 (Mo. App. E.D. 1996), *citing Carter v. Kinney*, 896 S.W.2d 926, 928-29 (Mo. banc 1995).  The distinction between invitee and licensee only disappears where the landowner was not aware of the dangerous condition and had no reason to be aware of it.  18A MOPRAC 75:4 (4t ed. updated August 2014) *citing Hutto*, 920 S.W.2d at 114.

[4] The other elements an injured invitee must show to prove a claim for premises liability are, (1) a dangerous condition existed on the landowner's premises which involved an unreasonable risk; (2) the landowner knew or by using ordinary care should have known of the condition; (3) the landowner failed to use ordinary care in removing or warning of the danger; and (4) the plaintiff sustained injuries as a result of the dangerous condition.  *Steward v. Baywood Villages Condominium Ass'n*, 134 S.W.3d 679, 682 (Mo. App. E.D. 2004).  Unlike duty, these elements are questions of fact. *See* MAI 22.03 (7th ed. 2012).

to an independent contractor during a period of construction. *Matteuzzi*, 866 S.W.2d at 132. Under these circumstances, the landowner is no longer considered the possessor of the land and is therefore relieved of potential liability. *Id.* The only way the landowner may be liable under these circumstances is if the injured employee demonstrates that the landowner retained possession and control of the premises, by establishing facts showing that landowner controlled the independent contractor's work. *Id.* "[T]he [land]owner's involvement in overseeing construction must be substantial[;] the control must go beyond securing compliance with the contracts; the [land]owner must be controlling the physical activities of the employees of the independent contractors or the details of the manner in which the work is done." *Id.* (quotations omitted).

As previously stated, it is undisputed that Appellant was an invitee at the time of his injury because he was an employee of an independent contractor, Envirotech. Therefore, in order to establish Respondent owed him a duty of care, a threshold element of his premises liability claim, Appellant has the burden to show that Respondent retained possession and control of the premises by establishing facts demonstrating Respondent controlled the physical activities of Envirotech's employees or the details of the manner of Envirotech's abatement work. If Appellant cannot meet this burden, that would negate an element essential to judgment in his favor, and summary judgment would be appropriate. *See Roberts*, 391 S.W.3d at 437.

### 2. Possession and control of the worksite

Consequently, the parties focus a great deal of argument on the possession and control of the premises. Their respective allegations are supported by undisputed facts. Appellant argues Respondent-landowner did not relinquish possession and control of the stairway, basement and boiler room. In support of his claim, Appellant points out Respondent's employees continued their own demolition and extraction work in the boiler room while the abatement project was underway,

6

Envirotech had not installed or constructed its containment safety equipment in the area where the injury occurred and Appellant avers he was not performing the type of work for which Envirotech was hired at the time of his injury.

In contrast, Respondent argues, because asbestos was located throughout the structure, including the basement and boiler room, Envirotech considered the entire structure to be "the worksite" and had free access throughout the building. Respondent further asserts Envirotech had sole discretion over how to do the abatement, where to begin the abatement, when and where to move the containment area, how quickly to perform the abatement, and how to sequence the progress of the project. Since Envirotech did not need Respondent's permission to move about the building or to move the containment area, Envirotech could randomly seize or surrender possession of various areas of the building on a day-to-day basis, without Respondent's authorization. Both parties agree Respondent lacked the skills and expertise to direct, control, and perform the abatement work.

Appellant relies on *Mullins v. Tyson Foods, Inc.*, 143 F.3d 1153 (8th Cir. 1998), to argue Envirotech's possession and control did not extend to the boiler room. In that case, a chicken processing factory employed an independent contractor to perform electrical work. *Id*. at 1155. An employee of the contractor walked down a hallway in the factory to begin his lunch break and slipped on liquid the factory employees left behind, causing injury. *Id*. The Eighth Circuit, applying Missouri law, held that *Matteuzzi*'s bar on landowner liability in cases involving independent contractors did not apply to those circumstances. *Id*. at 1159-60. It reasoned that the injured employee was not engaged in the contracted work when injured, and the area where the injury occurred was not under the contractor's control or a part of the job site. *Id*. While the *Mullins* Court examined the nature of the common area outside of the contractor's worksite, it also

7

analyzed the nature of the employee's work, or lack of work, being done at the time of the injury and whether the employee was under the control of the contractor at the time of the injury. *Id*. at 1159.

While we are not bound by the holding in *Mullins*, *see Doe v. Roman Catholic Diocese of St. Louis*, 311 S.W.3d 818, 823 (Mo. App. E.D. 2010), we believe *Mullins* is distinguishable on its facts. Unlike the employee in *Mullins*, Appellant was directed by his employer, Envirotech, into the basement to address the problem in electrical supply. He was on the job, working under the direction of his employer, and performing tasks associated with the asbestos abatement. While the basement, stairway and boiler room were not yet prepared for abatement, eventually, Envirotech was authorized to move into the area at its sole discretion. In contrast, the employee in *Mullins* was not on the job, was outside of the supervision of his employers was in a common area of the factory still in use in producing chickens.

Furthermore, unlike the holding in *Mullins*, we are bound by the decision of the Missouri Supreme Court in the holding of *Matteuzzi*. In order to demonstrate Respondent retained possession and control of the worksite for the purposes of premises liability, Appellant must show "the [land]owner's involvement in overseeing construction must be substantial[;] the control must go beyond securing compliance with the contracts; the [land]owner must be controlling the physical activities of the employees of the independent contractors or the details of the manner in which the work is done." *Matteuzzi*, 866 S.W.2d at 132 (quotations omitted).

Two Missouri cases with similar factual scenarios are instructive on the application of the retained control standard. In *Halmick*, the landowner stationed two of its own employees at the construction site to observe the work and ensure it proceeded properly in accordance with the contract. *Halmick v. SBC Corporate Services, Inc.*, 832 S.W.2d 925, 926, 928-29 (Mo. App. E.D.

8

1992).  Our Court held that this activity was insufficient to establish the owner's control of the worksite.  *Id*. at 929.  To establish the landowner retained control, the injured employee had to show that the landowner or its employees were actively engaged in controlling the physical activities of the independent contractors or the details of the work, not merely observing or overseeing the work. *Id*.

Similarly, in *Lawrence*, the landowner's employee not only visited the premises, but he checked the independent contractor into the jobsite every morning, gave the independent contractor access to the roof, and even assisted in the work by removing screens from windows that were in the independent contractor's way.  *Lawrence v. Bainbridge Apartments*, 919 S.W.2d 566, 568, 570 (Mo. App. W.D. 1996).  The Western District found the owner had ceded possession and control of the building to the independent contractor for premises liability purposes, because the independent contractor's employees were able to perform the work in any manner and order the independent contractor chose, so long as it conformed to the terms of the contract.  *Id*. at 570.

The circumstances were substantially similar here.   Even assuming the staircase, the basement, and boiler room were common areas potentially subjecting the Respondent to premises liability, like the hallway near the breakroom in *Mullins*, it is undisputed that Appellant was not working at the direction of or under the control of Respondent at any time, including the time of injury.  Appellant was an employee of Envirotech, he served at its direction and was under the authority of his supervisors at Envirotech.  He was directed by Envirotech into the boiler room and at no time was he under the supervision or control of Respondent.

While Graeser, Respondent's power plant operator, spent fifty percent of his time at the building during the times relevant to this case and was in the building "just about every day," his presence was unrelated to the abatement work.  Instead, Graeser regularly accessed the boiler room

9

in order to sell some pieces of equipment that had been stored there. The mere fact that his tasks took place in the same area where Appellant suffered his injury is irrelevant, because Graeser's work was totally unrelated to Envirotech's work. Likewise, Dean, Respondent's project manager, visited the building to perform inspections on a weekly basis, but as established by *Halmick* and *Lawrence*, mere presence or oversight to ensure that the work is being performed adequately does not establish control. Neither Graeser nor Dean had the authority or the expertise to direct Envirotech's employees, and Envirotech retained the autonomy to go about its work in any way it chose.

Finally, Envirotech was required to use the generator in order to provide electricity for its abatement work. If the generator ceased functioning, as it did on the day of the accident, Envirotech was forced to send Appellant to ascertain and correct the problem.[5] Appellant was acting on direct instruction from his employer when he entered the area.

### 3. Conclusion as to point one

Under these undisputed facts, we cannot say that Respondent retained possession and control over the worksite subjecting it to premises liability. Respondent's presence on the premises was not related to the abatement, it had no authority to direct Envirotech's performance of the work, it did not direct Appellant's physical activities or those of any other Envirotech employee, and Respondent did not exercise control over the details of the manner in which the work was done. *See Matteuzzi*, 866 S.W.2d at 132. Therefore, Respondent did not owe a duty of care to Appellant which would potentially subject Respondent to premises liability, and Respondent negated an essential element necessary for judgment in Appellant's favor. *See Roberts*, 391 S.W.3d at 437.

---

[5] The parties dispute the underlying reasons for problems with the jobsite's power supply. It may also be in dispute as to whether sending Appellant to the basement and boiler room was the appropriate step to address the inadequacy of the electrical supply. However, there is no dispute that Envirotech sent Appellant to the basement to assess and address the black out.

The trial court did not err in granting Respondent summary judgment on Appellant's premises liability claim. Point one is denied.

## C. Negligence

In his second and final point on appeal, Appellant asserts the trial court erred in granting summary judgment on his general negligence claims because factual issues remain in dispute as to whether Respondent or Respondent's employee breached a duty of care to Appellant. Specifically, Appellant argues summary judgment is inappropriate in that these claims of general negligence do not arise out of a premises liability theory, so they are not barred by the independent contractor doctrine[6] discussed in Section II.B. We agree.

There are three questions at this stage of the proceeding. The first question is whether Appellant, as an employee of an independent contractor, may plead a cause of action for negligence against Respondent as a landowner. The second question is whether there are material facts in dispute rendering summary judgment inappropriate as to the missing handrail. The third is whether there are material facts in dispute rendering summary judgment inappropriate as to the defective generator.

### 1. General negligence claims by an employee of an independent contractor against a landowner

Appellant is not restricted to solely pursuing a claim of premises liability, and he may pursue other causes of action against Respondent, including ones for general negligence. *Daoukas v. City of St. Louis*, 228 S.W.3d 30, 35 (Mo. App. E.D. 2007). To state a claim for negligence, a plaintiff must show, (1) a legal duty on the part of the defendant to conform to a particular standard

---

[6] The bar on premises liability claims by employees of independent contractors against landowners set out in *Matteuzzi* has been at times referred to as the "independent contractor *defense*" and the "independent contractor *exception to premises liability*" in subsequent Missouri case law. *See Daoukas v. City of St. Louis*, 228 S.W.3d 30, 34 (Mo. App. E.D. 2007) (emphasis added); *Cossey* at 590 (emphasis added). We refer to it here as the "independent contractor *doctrine*" because it is an overall analysis to determine whether the landowner owes a duty to the injured party in the first place. It is not an affirmative defense, and "independent contractor exception to premises liability" is too burdensome a phrasing.

of care; (2) breach of that duty; (3) proximate cause between the breach and the resulting injury; and (4) actual damages. *Nisbet v. Bucher*, 949 S.W.2d 111, 115 (Mo. App. E.D. 1997). Summary judgment is inappropriate where there are unresolved genuine issues on material facts affecting liability. *ITT Commercial Finance Corp.*, 854 S.W.2d at 376.

In *Daoukas*, two electricians employed by an independent contractor were injured when the landowner's employee allegedly failed to properly de-energize an electrical power source. 228 S.W.3d at 32-33. The landowner's employee, who was solely responsible for de-energizing the power source, admitted that he dismantled a safety interlock system and left the room. *Id*. at 33. When the other electricians began servicing the junction box with the power still on, it caused an explosion, injuring them. *Id*. This Court held that the independent contractor doctrine did not bar liability because the injuries arose out of the landowner's employee's negligent *conduct* in failing to properly de-energize the junction box, not from the condition of the property: "a duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury." *Id*. at 34-35 (quotations omitted).

Similarly, in *Cossey*, the landowner hired an independent contractor to repair a gasoline storage tank. 273 S.W.3d at 589. Pursuant to a contract, the landowner agreed to drain the tank prior to the start of the work. *Id*. The landowner allegedly drained the tank in a negligent manner, resulting in an explosion that injured one of the independent contractor's employees and killed another. *Id*. Again, we held that the independent contractor doctrine did not apply to those circumstances, because the injury arose out of the landowner's negligent *omission* to fulfill its contractual duty. *Id*. at 591-92. "The independent contractor [doctrine] applies exclusively to premises liability theories of negligence and cannot shield a defendant from liability under a general theory of negligence." *Id*. at 590-91. When the pleaded facts allege that liability arises from a

12

negligent act or omission, rather than a dangerous condition, the facts may support a claim of general negligence. *Id*. at 591.

Accordingly, when allegations include facts that the injury arose out of the landowner's negligent conduct rather than a condition of the property itself, a negligence claim may lie. In this case, Appellant alleges general negligence in the handling of a stairway bracket, the presence of an inadequate electrical supply, and the failure to warn Appellant for possible hazards.

### 2. Disputed facts as to the handrail

In this case, Appellant alleges there remain disputed facts as to whether Respondent negligently created a risk by removing the handrail and leaving the dangerous handrail bracket exposed.

In *Smith v. Dewitt and Associates, Inc.*, 279 S.W.3d 220, 224-25 (Mo. App. S.D. 2009), a subcontractor's employee was injured when he fell due to a loosely-installed guardrail on a construction platform. *Id*. at 221-22. Two other contractors working on the same project in the same common area had repeatedly removed and reinstalled the guardrail to more easily deliver building materials to the upper floors. *Id*. at 222. The injured employee then sued the two other contractors, alleging premises liability and negligence theories. *Id*. at 222. Regarding the negligence claim,[7] the Court held the contractor failed to show it owed no duty to the injured employee. *Id*. at 225. It reasoned that the injury occurred in a shared, common work area and the contractor *created* the dangerous condition. *Id*. at 224-25. The issue of control over the area was not relevant to a claim for negligence. *Id*.

Here, the stairway, basement, and boiler room were common work areas where Respondent's employees worked removing equipment and Envirotech's employees were scheduled

---

[7] The Court reversed and remanded the case without making a determination on the premises liability issues. *Smith*, 279 S.W.3d at 225.

13

to perform abatement work. Additionally, Appellant was sent to the area in question in the course of his employment to ascertain the problem with the generator and the electrical supply. Respondent's employees repeatedly removed and reinstalled the handrail in order to move equipment out of the basement, creating the dangerous instrumentality. Graeser testified at his deposition that he knew the rail was removable, that he had removed it and reinstalled it dozens of times, and that it was part of his job to reinstall it if he noticed it was missing. In short, viewing the facts in the light most favorable to Appellant as the non-moving party, Respondent owed a duty of care to Appellant, created a hazard, and should have foreseen the possibility of Appellant's injury. Whether Respondent's conduct breached a duty of care to Appellant is a question of fact. *G.E.T. ex rel. T.T. v. Barron*, 4 S.W.3d 622, 625 (Mo. App. E.D. 1999). Similarly, whether that breach was the proximate cause of Appellant's injury is also an issue of fact, and only under "clear and compelling circumstances" does it become a matter of law for the court. *Peterson v. Summit Fitness, Inc.*, 920 S.W.2d 928, 936 (Mo. App. W.D. 1996). No such clear and compelling circumstances exist here, and therefore we find there remain genuine issues of material fact affecting liability regarding the handrail.

### 3. Disputed facts as to the generator

The record also suggests there remain disputed facts as to Appellant's claims for negligence relative to the defective generator. Respondent furnished electricity to the worksite essential to the abatement and made the decision to replace Ameren's electrical service with electricity generated through an on-site generator. Disputed facts exist as to the reliability of the generator which, allegedly, would shut down necessitating frequent restarts. On the day of Appellant's injury, the generator ceased functioning, and as a result Appellant's supervisor sent him to the boiler room to

14

investigate. While on the stairs in the boiler room, Appellant fell and impaled himself on a handrail support bracket.

Respondent argues it did not specifically contract to provide electricity for the abatement. However, once Respondent voluntarily undertook to provide Envirotech with electricity, it assumed a duty to do so non-negligently, regardless of whether or not it had that duty originally. *See Strickland v. Taco Bell Corp.*, 849 S.W.2d 127, 132 (Mo. App. E.D. 1993) ("Missouri case law supports the proposition that one who acts gratuitously or otherwise is liable for the negligent performance of an act, even though there was no duty to act originally"). As in *Daoukas* and *Cossey*, Appellant alleged facts supporting a claim under a general theory of negligence for the actions of Respondent, not to a condition of the premises. Accordingly, the questions of whether Respondent's conduct breached a duty of care to Appellant and of whether Respondent's conduct was the proximate cause of Appellant's injuries are issues of fact and cannot be determined on summary judgment with this record. *G.E.T. ex rel. T.T.*, 4 S.W.3d at 625; *Peterson*, 920 S.W.2d at 936.

### 4. Conclusion as to point two

The independent contractor doctrine set out in *Matteuzzi* does not bar Appellant's claims for negligence arising out of Respondent's removal of the handrail and for providing Envirotech with a defective generator. The claims of general negligence arose out of Respondent's allegedly negligent conduct, not conditions of the property. As stated above, summary judgment is inappropriate where there are unresolved genuine issues of material fact affecting liability. *ITT Commercial Finance Corp.*, 854 S.W.2d at 376. Under the circumstances here, there remain genuine issues of material fact regarding whether Respondent breached the applicable duty of care by removing the handrail and providing a defective generator, and whether those alleged breaches

15

proximately caused Appellant's injuries. Therefore, the trial court erred in rendering summary judgment on Appellant's general negligence claims. Point two is granted.

**D.    Appellant's workers' compensation claim**

Finally, we note that Respondent also argues more generally that all of Appellant's claims are barred because he received workers' compensation insurance payments for his injuries, and Respondent indirectly paid for workers' compensation premiums which were included in Envirotech's contract price. Respondent contends, in effect, that this subjects it to double liability. Respondent presented this argument as an alternative ground in its motion for summary judgment. The trial court granted the motion for summary judgment without identifying the grounds for its decision and Appellant did not appeal this issue. "We are bound, of course, to uphold the trial court's entry of summary judgment . . . on any legal ground supported by the evidence." *Benson v. Kansas City, Bd. Of Police Com'rs*, 366 S.W.3d 120, 126 (Mo. App. W.D. 2012). However, Respondent's argument is not grounds for summary judgment.

Workers' compensation insurance protects an *employer* from civil liability from an injured employee. Appellant was not employed by Respondent; he was employed by an independent contractor, Envirotech, retained by Respondent. Respondent has identified no precedent suggesting the workers' compensation protection from direct civil liability should extend to anyone other than the employer, nor can this Court locate any.

Respondent relies on language from *Matteuzzi*, *Zueck*, and *Gillespie* which held "[i]t is unfair, therefore, to subject a landowner to what is, in effect, double liability—workers' compensation coverage and liability under the inherently dangerous activity doctrine." *Matteuzzi*, 866 S.W.2d at 131-32; *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384, 388-89

16

(Mo. banc 1991) (similarly holding); *Gillespie v. St. Joseph Light & Power Co.*, 937 S.W.2d 373, 376-77 (Mo. App. W.D. 1996) (similarly holding).

Respondent's reliance on *Matteuzzi*, *Zueck*, and *Gillespie* is misplaced, because those cases addressed vicarious liability for the "inherent dangerous" nature of the contracted work, not a direct lawsuit by the injured employee against the landowner for the landowner's negligent acts. *Matteuzzi*, 866 S.W.2d at 132; *Zueck*, 809 S.W.2d at 389; *Gillespie*, 937 S.W.2d at 376. This bar on vicarious liability is meant to serve public policy to reduce dangers related to the work: "When an activity is inherently dangerous, the landowner usually hires independent contractors because they have expertise and are more able to do the work safely and efficiently. If the landowner will be directly liable for injuries to these independent contractors and their employees, however, the landowner will have an incentive to hire its own [non-expert] employees." *Gillespie*, 937 S.W.2d at 377.

Appellant's petition alleges counts of premises liability and general negligence. He does not allege a cause of action against the landowner for being vicariously liable for inherently dangerous acts of the independent contractor. This reasoning does not extend to the landowner's negligent acts unrelated to the contract work, and as such, "[w]orkers' compensation laws have not been barriers to suits by injured employees against negligent third parties[,]" such as Respondent. *Zueck*, 809 S.W.2d at 390.

### III. CONCLUSION

The trial court's grant of summary judgment in favor of Respondent on Appellant's premises liability claim is affirmed. The trial court's grant of summary judgment in favor of

Respondent on Appellant's general negligence claims is reversed and remanded for proceedings consistent with this opinion.

_____
ROBERT M. CLAYTON III, Judge

Patricia L. Cohen, P.J., and
Roy L. Richter, J., concur.

18