STATE of Missouri ex rel. DELMAR GARDENS NORTH OPERATING, LLC and Delmar Gardens North, Inc., Relators,

v.

The Honorable Gary M. GAERTNER, Jr., Respondent.

No. SC 88297.

Supreme Court of Missouri, En Banc.

Dec. 4, 2007.

Gregory J. Minana, Giuseppe S. Giardina, St. Louis, for Relators.

Eli Karsh, William C. Goldstein, St. Louis, for Respondent.

LAURA DENVIR STITH, Judge.

Relators Delmar Gardens North Operating, LLC, and Delmar Gardens North, Inc. (collectively "Delmar Gardens") seek a writ of prohibition directing the trial court to quash its order requiring Delmar Gardens to produce the entire personnel file of an employee who allegedly witnessed the conduct underlying Delmar Gardens' petition for a permanent injunction. Because employment records are protected by a right of privacy, they are discoverable only insofar as they relate to matters put at issue in the pleadings. Particular care must be taken to avoid excessive intrusiveness where, as here, the records are sought only for the collateral purpose of potentially impeaching a witness. Respondent abused his discretion in ordering disclosure of the witness' entire personnel file. Because of the lack of a record showing that the parties explored to what extent, if any, less intrusive discovery would be appropriate, this Court does not address that issue. The preliminary writ of prohibition is made absolute.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Delmar Gardens owns and operates a skilled nursing facility in St. Louis County. One of the facility's residents was Rita McNeil. Ms. McNeil's son, James McNeil, frequently visited his mother at Delmar Gardens.

On November 8, 2006, Beather Johnson was working as a certified nurse's assistant in the part of Delmar Gardens where Ms. McNeil resided. As Ms. Johnson approached Ms. McNeil's room, she saw James McNeil in another resident's room; this resident is non-communicative and is fed only through a tube. This resident was in her bed, and Ms. Johnson stated that she observed that Mr. McNeil had his hand underneath her bed sheet. Ms.

Johnson reported this incident to her supervisor. The next day, Delmar Gardens sought and received a temporary restraining order against Mr. McNeil, prohibiting him from entering or trespassing upon the premises. Delmar Gardens seeks to make that injunction permanent.[1]

Mr. McNeil deposed Beather Johnson in late December 2006 in advance of the permanent injunction hearing. At the deposition, Ms. Johnson answered a number of questions about her work history and about the incident involving Mr. McNeil.[2] Four weeks later, Mr. McNeil requested Delmar Gardens to produce its "entire personnel file of Beather Johnson." Delmar Gardens filed a motion to quash the subpoena on the grounds that its employees' employment records are confidential and are discoverable only to the extent they relate to the issues raised in the pleadings in this case, in which Ms. Johnson is merely a witness, not a party. Following a hearing, Respondent denied Delmar Gardens' motion to quash and entered an order requiring Delmar Gardens "to forthwith disclose to Defendant the entire personnel file of witness Beather Johnson."

Delmar Gardens thereafter sought a writ of prohibition. This Court issued its preliminary writ of prohibition on February 8, 2007.

## II. STANDARD OF REVIEW

■ This Court has the authority to "issue and determine original remedial writs." Mo. Const. art. V, sec. 4.1. A writ of prohibition is appropriate if it is necessary to preserve "the orderly and economical administration of justice," *State ex rel. Noranda Aluminum, Inc. v. Rains,* 706 S.W.2d 861, 863 (Mo. banc 1986), or "to prevent usurpation of judicial power." Sec. 530.010. Trial courts have broad discretion in administering rules of discovery, which this Court will not disturb absent an abuse of discretion. *State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 927 (Mo. banc 1992). Writs are an appropriate remedy, however, when a trial court has improperly ordered discovery of confidential material. *See State ex rel. Pooker v. Kramer,* 216 S.W.3d 670, 672 (Mo. banc 2007) (making writ of prohibition absolute where discovery order went beyond proper scope of discoverable evidence).

## III. DISCOVERY OF EMPLOYMENT FILES FOR IMPEACHMENT PURPOSES MUST BE LIMITED IN SCOPE

### A. Delmar Gardens Has Standing to Object to the Disclosure of its Employees' Personnel Files.

■ As a threshold matter, Respondent asserts that Delmar Gardens lacks standing to object to the production of Ms. Johnson's personnel file because the right of privacy is personal to her. In order to have third-party standing, a litigant must be able to show three things: (1) a concrete injury, (2) a close relation to the third party, and (3) some hindrance to the third party's ability to protect its own interests. *State v. Knese,* 985 S.W.2d 759, 775 (Mo. banc 1999).

---

1. In the intervening months, Mr. McNeil's mother has died, yet both sides have indicated that they will go forward with the lawsuit, for reasons not disclosed by the record.

2. Mr. McNeil asserts that a request for production of documents accompanied the notice of deposition that was served upon Ms. Johnson, but that document is not part of the record before this Court. The transcript of Ms. Johnson's deposition, which is part of the record, does not contain any discussion of document requests.

Delmar Gardens can satisfy each of these requirements. Disclosure of confidential information about Ms. Johnson could subject Delmar Gardens to liability under Missouri law—a concrete injury. *See Fierstein v. DePaul Health Center*, 24 S.W.3d 220, 223 (Mo.App. E.D.2000) (affirming award of actual and punitive damages for disclosure of confidential records without authorization).[3] Delmar Gardens, as Ms. Johnson's employer and the custodian of her personnel files at the time of the incident in question, has a close relationship to the third party. Finally, Ms. Johnson is not a party to this action, nor is she the custodian of her personnel file. As such, she is not entitled to receive legal notice that Mr. McNeil has requested production of these documents, which hinders her ability to protect her personnel file. In these circumstances, the employer has standing to object to production of its employee's employment records.[4]

**B. Respondent Abused His Discretion in Ordering Production of Ms. Johnson's Entire Personnel File.**

■ Delmar Gardens alleges Respondent abused his discretion in ordering it to produce Ms. Johnson's personnel file in its entirety, thereby rejecting completely its argument that to produce the entire file would violate Ms. Johnson's right to privacy and would fail to properly balance the confidential nature of the records with Mr.

McNeil's discovery needs.[5] This Court agrees.

■ Missouri recognizes a right of privacy in personnel records that should not be lightly disregarded or dismissed. *See State ex rel. Crowden v. Dandurand*, 970 S.W.2d 340, 343 (Mo. banc 1998) ("Employees have a fundamental right of privacy in employment records"). Contrary to Delmar Gardens' assertions, however, this does not mean that employment records are entirely undiscoverable in every case. Even though the right of privacy in employment records has been described as "fundamental," *State ex rel. Crowden*, 970 S.W.2d at 343, there can be instances in which some discovery is appropriate. For example, in *State ex rel. Tally v. Grimm*, 722 S.W.2d 604, 605 (Mo. banc 1987), this Court ordered that the plaintiff's earning authorizations, which were kept in his personnel file, were sufficiently related to the issues in the pleadings to be discoverable. *Tally* acknowledged the overarching confidentiality of the records, however, and recommended the trial court perform "an *in camera* examination" of the documents "to determine which matters are not relevant to the lawsuit." Id. The Court also acknowledged that "protective orders may be entered by the [trial] court to preserve the privacy of the parties." *Id.* Indeed, our discovery rules expressly contemplate such limited discovery in certain circumstances. *See, e.g.*, Rule 56.01(c)(1–4) (de-

**3.** Respondent argues that these disclosure cases are inapplicable because they arose in the context of seeking medical information or attorney-client communications and the latter kinds of documents enjoy greater protection than do an employee's documents. Respondent cites no law to support this argument, however.

**4.** The record in this case does not reflect any attempt by Mr. McNeil to obtain a waiver from Ms. Johnson directly.

**5.** Mr. McNeil requested Delmar Gardens to produce:

The entire personnel file of Beather Johnson, including, but not limited to her application for employment, background check, and all matters pertaining to discipline (whether oral or written), attendance records from the date of her employment (including dates and times) and any other materials in your possession in any form, including those contained on a server or computer, relating to Beather Johnson.

tailing limited discovery options available upon motion).

■ Any discovery that is permitted of confidential personnel records must be "limited to information that relates to matters put at issue in the pleadings, especially in relation to sensitive personal information." *State ex rel. Madlock v. O'Malley*, 8 S.W.3d 890, 891 (Mo. banc 1999); *see also State ex rel. Crowden*, 970 S.W.2d at 343 ("[A] subpoena for employment records must be limited to the issues raised in the pleadings."). The overbroad request for Ms. Johnson's "entire personnel file" and "any other materials in your possession in any form ... relating to Beather Johnson" clearly is *not* limited to the issues raised in the pleadings. See State ex rel. *Madlock*, 8 S.W.3d at 892 (request for "any and all information ... concerning [a person's] employment is too broad").

The overbreadth of the pending discovery request is even more striking when one considers that Ms. Johnson is not a party to the suit.[6] Rather, this is an injunction action brought by Delmar Gardens against Mr. McNeil based on an incident to which Ms. Johnson merely is a witness. Permitting discovery of a witness' entire personnel file solely for a collateral matter such as impeachment would eviscerate the right of privacy that employees enjoy as to those records. *See State ex rel. Pooker*, 216 S.W.3d at 672. It could also discourage witnesses from reporting incidents of misconduct, for fear that their private personnel information be might later be discoverable.

Finally, counsel for Mr. McNeil admitted at oral argument that the discovery request "could have been more reasonably tailored." Mr. McNeil's counsel was able to identify for this Court several specific types of information, e.g., documents related to disciplinary incidents, prior allegations of misconduct, or training, that he believes may be relevant and that may be present in Ms. Johnson's employment records. That is not what he requested, however, nor what Respondent ordered Delmar Gardens to produce. "The discovery process was not designed to be a scorched earth battlefield upon which the rights of the litigants and the efficiency of the justice system should be sacrificed to mindless overzealous representation of plaintiffs and defendants." *State ex rel. Madlock*, 8 S.W.3d at 891. In light of the Respondent's order enforcing this overbroad request, Delmar Gardens had no option but to seek relief by way of extraordinary writ. Nonetheless, "there is no evidence in the record that justifies the parties' inability to amicably resolve this issue." *Id.* Nor is there any record showing that the parties even attempted to reach a compromise on this issue in the court below.

For these reasons, this Court finds that Respondent's failure to balance Ms. Johnson's privacy interests with Mr. McNeil's need to obtain disclosure and his ability to obtain the information through less invasive means constituted a clear abuse of discretion. *Id.* ("[D]iscovery relevant to impeachment must be no more intrusive than necessary ..."); *see also State ex rel. Madlock*, 8 S.W.3d at 891–92. However, "[t]he lack of a record of exploration of issues relating to relevance, burden, and protection of privileged and confidential matters prevents this Court from determining what lesser degree of discovery [if any] would have been within the court's

---

6. Indeed, in *State ex rel. Madlock,* this Court held that such a request directed to the records of the *plaintiff* was too broad. 8 S.W.3d at 892 (holding that request for "any and all information ... concerning *plaintiff's* employment" is impermissibly overbroad) (emphasis added).

discretion to permit." *State ex rel. Pook-er*, 216 S.W.3d at 672. It therefore is left to the trial court to determine whether, in light of the principles stated herein, any discovery of these records may be appropriate and, if so, the necessary conditions of that discovery. *See State ex rel. Tally*, 722 S.W.2d at 605 (ordering that certain employment records were discoverable, but recommending an *in camera* examination to limit disclosure to those records that were relevant and the use of a protective order to minimize the invasion of privacy).

## IV. CONCLUSION

For the reasons set forth above, the preliminary writ of prohibition is made absolute.

PRICE, TEITELMAN, LIMBAUGH, RUSSELL and WOLFF, JJ., and BARNEY, Sp.J., concur.

BRECKENRIDGE, J. not participating.