

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| BEN SANSONE, | ) | |
| Appellant, | ) | WD84426 |
| v. | ) | |
| | ) | |
| GOVERNOR OF MISSOURI, et al., | ) | FILED: June 7, 2022 |
| Respondents. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### THE HONORABLE JON E. BEETEM, JUDGE

### BEFORE DIVISION ONE: LISA WHITE HARDWICK, PRESIDING JUDGE,
### ALOK AHUJA, AND MARK D. PFEIFFER, JUDGES

Ben Sansone, on behalf of The Sunshine Project ("Sansone"), appeals the

circuit court's entry of summary judgment against him and in favor of the

Governor of Missouri[1] and the custodian of records for the governor's office,

Michelle Hallford (collectively, "the Governor's Office"), on Sansone's petition

alleging that the former governor, Eric Greitens, Hallford, and other Governor's

Office employees violated the Sunshine Law.[2]  Sansone contends the court

---

[1] Eric Greitens was sworn in as the governor of Missouri on January 9, 2017, and was governor when the petition was filed in this case.  He resigned on June 1, 2018.  Then-Lieutenant Governor Michael Parson became governor for the remainder of the term under article IV, section 11(a) of the Missouri Constitution.  In November 2020, Governor Parson was elected to a full term of office.

[2] Section 610.010 *et seq*.  All statutory references are to the Revised Statutes of Missouri 2016.

misinterpreted and misapplied the law in several respects and abused its discretion in staying discovery related to six of his claims. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On December 20, 2017, Sarah Madden, special counsel for the Governor's Office under Greitens, received an email on behalf of Sansone requesting that Hallford provide records under the Sunshine Law. The email included these five requests:

1. Documents or phone records, including logs, that show the date that the governor or anyone employed by the governor's office downloaded the phone application Confide on any [of] their mobile phones.

2. Documents or phone logs that show the date that the governor and anyone employed by the governor's office downloaded any mobile phone and/or computer application which purpose of the application is to automatically destroy text messages and/or other forms of communication after the communication is sent or received.

3. Documents or phone records that show the mobile phone numbers used by the governor.

4. A copy of all SMS messages, text messages, and/or communications sent and/or received by the Governor using the mobile phone application Confide.

5. A copy of all SMS messages, text messages, and/or communications sent and/or received by anyone employed by the governor's office using the mobile phone application Confide.[3]

---

[3] Sansone also requested a copy of the Governor's Office's document retention policy. In her initial response to Sansone's request, Madden provided website addresses for the Secretary of

2

Madden responded to the email within three business days. In her response, she stated that the Governor's Office was reviewing the request and anticipated being able to provide a response or a time and cost estimate, if applicable, for the requested records in no more than twenty business days. After receiving this response, Sansone filed a petition against the Governor's Office seeking an immediate injunction prohibiting the governor and all Governor's Office employees from using Confide or any other automatic communication destruction software and alleging violations of the Sunshine Law and the State and Local Records Law.

Madden sent a follow-up letter to Sansone on January 25, 2018. In this letter, Madden stated that the Governor's Office did not have any records to provide in response to his request for the date that Greitens or anyone employed in the Governor's Office downloaded the Confide application and for the Confide messages sent or received by Greitens or anyone employed in the Governor's Office. As for the remaining requests, Madden stated that any records in response to Sansone's request for the date that Greitens and anyone employed by the Governor's Office downloaded any cell phone and/or computer application whose purpose is to automatically destroy text messages and/or other forms of communication after the communication is sent or received would be considered

State's records retention schedules. Sansone did not assert any Sunshine Law violation claims based on Madden's response to this request, and it is not at issue in this appeal.

3

closed pursuant to Sections 610.021(21) and 610.021(18). She explained that the disclosure of such information would impair the ability of the Governor's Office's Security Division to protect Greitens and his staff and asserted that the interest in non-disclosure outweighed the public interest in disclosure. Lastly, with respect to Sansone's request for Greitens's cell phone numbers, Madden stated that such records were considered closed under Sections 610.021(14) and 407.1500.

In May 2018, Sansone filed a second amended petition. In his second amended petition, Sansone again sought injunctive relief prohibiting the Governor and all Governor's Office employees from using Confide or any other automatic message destruction software (Count I). Sansone alleged seven counts of Sunshine Law violations: the Governor's Office failed to provide access to the records within three days, in violation of Section 610.023.3 (Count II); the Governor's Office failed to provide a detailed and reasonable explanation of the cause of the delay in producing the record within three days, in violation of Section 610.023.3 (Count III); the Governor's Office failed to produce records showing the date that Greitens and anyone employed in the Governor's Office downloaded Confide on their cell phones, in violation of Section 610.023.3 and .4 (Count IV); the Governor's Office deliberately misapplied Section 610.021(21)'s "terrorism exception" and Section 610.021(18)'s "hacker exception" in refusing to produce records of the date that Greitens and anyone employed in the Governor's Office downloaded any automatic message destruction software (Count V); the Governor's Office deliberately misapplied Section 407.1500 in refusing to produce

4

records showing Greitens's cell phone numbers (Count VI); the Governor's Office violated Section 610.023.2 when it failed to collect, maintain, and produce messages sent or received by the office using Confide (Count VII); and there was a civil conspiracy between all defendants to violate the Sunshine Law by using automatic message destruction software (Count VIII).[4]

The court entered an order stating that discovery should proceed sequentially to determine whether any messages sent or received over the Confide application could be recovered, either through Confide, Inc., Confide-affiliated third-party servers, or on cell phones that send or receive messages using Confide. The court ordered Sansone to serve a subpoena on Confide, Inc. The court further ordered the Governor's Office to produce and pay for a forensic expert to conduct a forensic examination, using exemplar cell phones, to determine whether any messages sent or received using Confide could be recovered on those phones after those messages are sent or received. The order provided that, after Sansone received the report from this expert, he could depose the expert and, at his discretion and cost, put forth his own expert to conduct his or her own review. The court stayed all other pending discovery until it could determine whether or not messages sent or received using Confide could be recovered, which the court stated "may have a bearing on what records are at issue." The court reiterated that, at that point in the process, it needed "to

---

[4] Additionally, Sansone's second amended petition alleged four counts of violations of the Open Records Law and State and Local Records Law in Chapter 109. The court granted the Governor's Office's motion to dismiss these counts, and Sansone does not appeal their dismissal.

5

ascertain exactly what type of evidence is likely to exist as well as the exact nature of the operation of the Confide application."

In response to Sansone's subpoena, Confide, Inc.'s co-founder and president, Jon Brod, sent a letter stating:

> As an end-to-end encrypted and ephemeral messenger, all Confide messages and substantially all data disappear after a message is read. The data we retain and are able to provide is principally around account creation – user name, email address and/or phone number used to sign up for the account, and when the account was created. We do not have any data on deleted accounts, including whether or not the account ever existed.

The Governor's Office hired forensic expert John Mallery to determine what artifacts, if any, could be recovered from an iPhone that is using the Confide application. According to Mallery, the difference between an ordinary messaging application and an ephemeral messaging application such as Confide is that, in an ephemeral messaging application, once the messages are sent, they are automatically deleted from the phone that sent them, and once the messages are read, they are automatically deleted from the phone that received them. In contrast, standard messaging applications require user interaction to delete sent and received messages.

Mallery analyzed an Apple iPhone 6s, which he set up as a new phone, and downloaded and installed the Confide application. Mallery then sent and received messages using Confide. After the messages had been sent from and received by the test phone, Mallery processed and analyzed the test phone using industry

6

standard forensic analysis tools from MSAB, Cellebrite, and XRY. Mallery chose Cellebrite because it has been in the mobile device industry for a very long time and the FBI uses it. XRY is used by police, law enforcement, military, government intelligence agencies, and forensic laboratories in over 100 countries. According to Mallery, he performed all possible extractions of data on the test phone. After performing the extractions, he analyzed the extracted data using non-case sensitive keyword searches, including terms, phrases, and phone numbers, and he performed a manual review of the data.

Mallery was able to verify that Confide does not allow the recipient to retain opened messages; sent messages are deleted from the sender's phone upon the opening of a new message; and the last unopened sent message is no longer on the sender's phone after 48 hours. Mallery assumed the recipient of an unopened message would not have access to the message after 48 hours. In Mallery's opinion, text messages sent and received using Confide cannot be recovered using forensic methodology, and he was "fairly certain" that fragments from messages sent and received using Confide on an iPhone cannot be recovered. Mallery believed there was "zero chance" of using forensic methods to reconstruct messages sent or received via Confide.

Mallery opined that he would have reached the same result if he had conducted the same experiment on a different version of the iPhone, on another type of phone such as an Android, with a different version of the Confide application, or if he had used any particular phone that a member of the

7

Governor's Office might have had. He admitted, however, there was a "slim possibility" that the results would have been different on a different version of the phone. Mallery concluded that his findings were consistent with Confide, Inc.'s description of the application and were also expected when using an ephemeral messaging application.

Mallery issued his report stating these conclusions and was deposed by both parties. During his deposition, Sansone questioned Mallery extensively about his qualifications and the scope of his analysis. Mallery admitted that he had no other experience with Confide before this case. Although Mallery's searches identified several configuration files on the phone for the Confide application, he did not open those files. He explained that configuration information "allows the application to run." Mallery was "not certain" as to whether configuration files contained any personal information about someone's use of Confide, but he did not believe that they did.

Mallery testified that he could "potentially" or "possibly" determine the dates the Confide application was downloaded on and deleted from a phone; however, he did not perform such an analysis. Additionally, he testified he did not perform any analyses to determine how many messages were sent or received using Confide, who received or sent messages using Confide, whether using the microphone to speak a message into Confide would leave any artifacts or metadata that could be recovered, or whether messages could be recovered if Confide was used on a desktop computer instead of a phone. Mallery explained

8

that the scope of his analysis was very limited in that he was simply trying to determine whether or not he could find artifacts from specific messages that were sent and received, and he "did no other analysis on the application Confide beyond that."

Sansone declined the opportunity to have an expert of his choosing perform a forensic analysis. The Governor's Office filed a motion for summary judgment in December 2018. Sansone requested time to conduct additional discovery before responding to the summary judgment motion.

On July 8, 2019, the court denied the motion for additional discovery after finding that "the discovery sought would not have made a difference as it primarily went to the mental state of the alleged violators or to issues after [Sansone]'s Sunshine Law request was submitted." The court granted summary judgment in favor of the Governor's Office on all counts except Count VI, which concerned the Governor's Office's refusal to produce Greitens's cell phone numbers. In its judgment, the court found that the undisputed facts established that messages sent and received using Confide are not retained on the device or on a server. The court found that, "[t]o the extent that it is a record, it is not much different tha[n] a digital phone call which exists only for the moment." The court noted that, while Sansone was permitted to engage an expert, he did not do so and, therefore, he could not controvert Mallery's findings. The court further noted that Sansone's counsel argued a number of facts on which Mallery might be subject to impeachment, but because Sansone's counsel was not an expert, such

9

arguments did not satisfy Sansone's burden to show that genuine issues of material fact remained.

With regard to each count, the court found on Count I that enforcement of Chapter 109's records retention requirements was not available via private action and, therefore, Sansone was not entitled to an injunction; on Count II that no violation occurred because the Governor's Office replied within three days; on Count III that the Governor's Office's explanation for its delay in providing records was reasonable; and on Counts IV, V, VII, and VIII that the undisputed facts indicated that the records Sansone was seeking, *i.e.*, the dates that Greitens and Governor's Office employees downloaded Confide or other ephemeral messaging applications and the Confide messages that Greitens and Governor's Office employees sent and received, did not exist. The court subsequently ordered that discovery proceed only on Count VI, which asserted that the Governor's Office deliberately misapplied Section 407.1500 in refusing to produce records showing Greitens's cell phone numbers.

Sansone filed a motion for partial summary judgment on Count VI. In his motion, he sought a judgment ordering that Greitens's cell phone numbers were public records that could not be closed and had to be produced. The Governor's Office filed a cross-motion for summary judgment arguing that Greitens's personal cell phone number[5] was a closed record and that, even if it was not a

---

[5] There was conflicting evidence in the summary judgment record as to whether Greitens had a government-issued cell phone. There was no dispute between the parties that the number of a government-issued cell phone is an open record subject to disclosure. Sansone's Point IV, which

10

closed record, the court should still grant summary judgment in its favor because the decision to close the record of his cell phone number was made in good faith and was not a knowing and purposeful violation of the Sunshine Law.

On February 22, 2021, the circuit court entered an amended judgment finding that Greitens's personal cell phone number was an individually identifiable personnel record and, therefore, was exempt from disclosure under Section 610.021(13). The court granted summary judgment in favor of the Governor's Office on Count VI and incorporated by reference its July 8, 2019 order granting summary judgment in favor of the Governor's Office on all other counts. Sansone appeals.

### STANDARD OF REVIEW

Appellate review of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 74.04(c)(6). "Only genuine disputes as to material facts preclude summary judgment." *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 453 (Mo. banc 2011).

Where, as in this case, the movant is the defendant, the movant establishes the right to judgment as a matter of law by showing one of the following:

(1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of

_____

concerns the failure to produce Greitens's cell phone number, challenges the court's decision that the Governor's Office had the authority to close Greitens's personal cell phone number.

11

discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support [its] properly pleaded affirmative defense.

*Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 437 (Mo. banc 2013).

In determining whether the movant has met this burden, we review the summary judgment record in the light most favorable to the party against whom judgment was entered and accord that party the benefit of all reasonable inferences. *Goerlitz*, 333 S.W.3d at 453. We "do not weigh conflicting evidence or make credibility determinations." *Brentwood Glass Co. v. Pal's Glass Serv., Inc.*, 499 S.W.3d 296, 302 (Mo. banc 2016). "Instead, summary judgment tests 'simply for the existence, not the extent' of genuine issues of material fact." *Id.* (quoting *ITT*, 854 S.W.2d at 378). "A factual question exists if evidentiary issues are actually contested, are subject to conflicting interpretations, or if reasonable persons might differ as to their significance." *Id.* (quoting *Martin v. City of Washington*, 838 S.W.2d 487, 492 (Mo. banc 1993)). "Only evidence that is admissible at trial can be used to sustain or avoid summary judgment." *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 162 (Mo. App. 2016) (citation omitted). "Hearsay statements cannot be considered in ruling on the propriety of summary judgment." *Id.* (citation omitted).

Citing *Dial v. Lathrop R-11 School District*, 871 S.W.2d 444, 446 (Mo. banc 1994), both parties state that we must examine the "entire record" to determine whether any genuine issues of material fact remain. This is not an accurate

statement of current law.  In a more recent case than *Dial*, the Supreme Court

described the record we review on summary judgment:

> [1] Facts come into a summary judgment record *only* via Rule
> 74.04(c)'s numbered-paragraphs-and-responses framework.  [2]
> Courts determine and review summary judgment *based on that Rule
> 74.04(c) record, not* the whole trial court record.  [3] Affidavits,
> exhibits, discovery, etc. generally play only a secondary role, and
> then only as cited to support Rule 74.04(c) numbered paragraphs or
> responses, *since parties cannot cite or rely on facts outside the Rule
> 74.04(c) record.*  [4] Summary judgment rarely if ever lies, or can
> withstand appeal, unless it flows as a matter of law from appropriate
> Rule 74.04(c) numbered paragraphs and responses *alone.*

*Green v. Fotoohighiam*, 606 S.W.3d 113, 117-18 (Mo. banc 2020) (quoting *Jones*,

508 S.W.3d at 161).  As the Court noted in *Green*, when read together, these

principles "require a court to 'determine whether *uncontroverted* facts established

via Rule 74.04(c) paragraphs and responses demonstrate movant's right to

judgment *regardless of other facts or factual disputes.*'"  *Id.* at 118 (citation

omitted).  Neither the circuit court nor the appellate court should "sift through the

entire record to identify disputed issues, which, in turn, would cause a court to

impermissibly act as an advocate for a party."  *Id.*

### ANALYSIS

In Point I, Sansone contends the circuit court erred in granting summary

judgment against him because the court misinterpreted Section 610.010(6)'s

definition of the term "public record" to require retention as "an exclusive

definitional element and necessary condition of a public record."  Sansone argues

13

this interpretation is contrary to legislative intent and the plain meaning of the term as it is used in the Sunshine Law.

Section 610.010(6) defines a "public record" subject to disclosure under the Sunshine Law as:

> [A]ny record, whether written or electronically stored, retained by or of any public governmental body including any report, survey, memorandum, or other document or study prepared for the public governmental body by a consultant or other professional service paid for in whole or in part by public funds, including records created or maintained by private contractors under an agreement with a public governmental body or on behalf of a public governmental body; provided, however, that personally identifiable student records maintained by public educational institutions shall be open for inspection by the parents, guardian or other custodian of students under the age of eighteen years and by the parents, guardian or other custodian and the student if the student is over the age of eighteen years. The term "public record" shall not include any internal memorandum or letter received or prepared by or on behalf of a member of a public governmental body consisting of advice, opinions and recommendations in connection with the deliberative decision-making process of said body, unless such records are retained by the public governmental body or presented at a public meeting. Any document or study prepared for a public governmental body by a consultant or other professional service as described in this subdivision shall be retained by the public governmental body in the same manner as any other public record[.]

We need not decide whether messages exchanged by Greitens and his staff using Confide, and other data concerning the Governor's Office's use of Confide, constituted "public records" under this definition. Even if the requested information constituted "public records," Sansone's request faces a separate, insuperable obstacle: the summary judgment record establishes, as a matter of

14

undisputed fact, that the messages and data Sansone seeks were not in existence, in the possession of the Governor's Office, or retrievable at the time of his request.

The Sunshine Law only requires that governmental agencies provide access to records then in existence, and in the agencies' possession or under their control. As the Missouri Supreme Court recognized in *Hemeyer v. KRCG-TV*, 6 S.W.3d 880 (Mo. banc 1999), "While chapter 109 specifies how long materials are retained, access is governed by chapter 610" – the Sunshine Law. *Id.* at 882. Where requesters have asked government agencies to create customized compilations or summaries of their records, we have held that the Sunshine Law was inapplicable, since it only requires agencies to disclose *existing* records – not to create new ones. "The plain language of the Sunshine Law does not require a public governmental body to create a new record upon request, but only to provide access to existing records held or maintained by the public governmental body." *Jones v. Jackson Cnty. Circuit Ct.*, 162 S.W.3d 53, 60 (Mo. App. 2005); *accord*, *Am. Family Mut. Ins. Co. v. Mo. Dep't of Ins.*, 169 S.W.3d 905, 915 (Mo. App. 2005) (agency could properly refuse records request where "the data requested . . . was not contained in an existing record held by" the agency).

Similarly, in *Glasgow School District v. Howard County Coroner*, 633 S.W.3d 822 (Mo. App. 2021), we recently held that the Howard County Coroner's Office had not violated the Sunshine Law when it failed to disclose exhibits that were admitted at a public coroner's inquest, but which were "generated by or

15

obtained by the sheriff's department" and retained by the sheriff's department after the inquest. *Id.* at 833. We explained: "[T]his court is tasked with determining whether Coroner's Office violated the Sunshine Law when it did not disclose the records not in its custody. We find that it did not." *Id.*

Two provisions of the Sunshine Law address the duty of governmental agencies to maintain possession of public records. Those provisions are inapplicable here, however. Section 610.027.1 provides that, upon service of a summons or a pleading asserting a Sunshine Law claim, "the custodian of the public record that is the subject matter of such civil action shall not transfer custody, alter, destroy, or otherwise dispose of the public record . . . until the court directs otherwise"—even if the agency claims that the record is not a "public record" or that it is exempt from disclosure. In this case, the information at issue was destroyed well before the filing of this lawsuit; accordingly, Section 610.027.1 is inapplicable. Section 610.023.2 provides that "[n]o person shall remove original public records from the office of a public governmental body or its custodian without written permission of the designated custodian." Sansone does not argue that the information at issue here was "remove[d] . . . from the office of a public governmental body"—indeed, he makes no argument that the data he seeks was ever physically located in the Governor's Office.

We also recognize that Section 610.025 specifically designates as public records certain "message[s] relating to public business" that are "transmit[ted] . . . by electronic means" and requires those messages to be transmitted to the

16

agency's custodian of records, or to the sender's "public office computer."[6] Sansone has never invoked this provision, however, either in the circuit court or on appeal and, accordingly, we do not consider its potential applicability to the information Sansone requested.

Defining the records subject to disclosure under the Sunshine Law as records that have been maintained by a public governmental body makes sense in light of the purpose of Chapter 610, which is to provide *access* to such records. *See Hemeyer*, 6 S.W.3d at 882. Adoption of Sansone's argument would lead to the absurd result that public governmental bodies would have to provide access to records that they do not hold or maintain, either in their keeping or someone else's. "When engaging in statutory interpretation, we are to presume a logical result, as opposed to an absurd or unreasonable one, and we are always led to avoid statutory interpretations that are unjust, absurd, or unreasonable." *State ex rel. Jones v. Prokes*, 637 S.W.3d 110, 116 (Mo. App. 2021) (internal quotation marks and citations omitted).

Prior to a Sunshine Law request, whether a record must have been retained and, if so, for how long are issues governed by Chapter 109, not Chapter 610. *See*

---

[6] Section 610.025 provides in full:

> Any member of a public governmental body who transmits any message relating to public business by electronic means shall also concurrently transmit that message to either the member's public office computer or the custodian of records in the same format. The provisions of this section shall only apply to messages sent to two or more members of that body so that, when counting the sender, a majority of the body's members are copied. Any such message received by the custodian or at the member's office computer shall be a public record subject to the exceptions of section 610.021.

17

*Hemeyer*, 6 S.W.3d at 882.  Chapter 610 governs access to records, *id.*, and public governmental bodies can only provide access to records that they hold or maintain, either in their keeping or someone else's.  The circuit court did not err in finding that the Governor's Office did not violate the Sunshine Law when it failed to disclose information that was no longer in its possession.  Point I is denied.[7]

In Point II, Sansone contends the circuit court erred in granting summary judgment in favor of the Governor's Office because the court erroneously shifted the burden of persuasion to him to prove the Governor's Office violated the Sunshine Law.  Section 610.027.2 provides:

> Once a party seeking judicial enforcement of sections 610.010 to 610.026 demonstrates to the court that the body in question is subject to the requirements of sections 610.010 to 610.026 and has held a closed meeting, record or vote, the burden of persuasion shall be on the body and its members to demonstrate compliance with the requirements of sections 610.010 to 610.026.

Under this section, the party seeking enforcement of the Sunshine Law has the initial burden of demonstrating that "a governmental body is subject to the

---

[7] It is not lost on this court that a public official's use of the Confide application has the practical effect of side-stepping the reach of Missouri's Sunshine Law via ephemeral messaging applications that delete communications before any request for their disclosure can be made. And, as Sansone's counsel noted at the oral argument of this case, it may be time to "update" Missouri's Sunshine Law that was originally enacted in 1973—well before cellular phone technology existed and, likewise, well before ephemeral messaging applications existed. But, it is not within the power of the judicial branch of government to "create" statutory law; that power is vested with the legislative branch of government. Unless and until the legislature "updates" Missouri's Sunshine Law to account for cellular phone technology and associated data, we cannot add words to the statute to accommodate Sansone's legitimate concerns about the use of ephemeral messaging applications by public officials. Nothing in this opinion should be interpreted to suggest that we condone the use of ephemeral messaging applications by public officials; but, the limitation on the Governor's Office's use of such messaging technology may be found in Chapter 109—not Chapter 610.

Sunshine Law and that it has claimed that a record is closed." *Gross v. Parson*, 624 S.W.3d 877, 891 (Mo. banc 2021) (quoting *Laut v. City of Arnold*, 491 S.W.3d 191, 194 (Mo. banc 2016)).  Once the party makes this showing, "the burden is on the governmental body to demonstrate that the Sunshine Law does not require disclosure." *Id.* (quoting *Laut*, 291 S.W.3d at 194).  Sansone argues that he met his initial burden because he established that the Governor's Office was a public governmental body that closed records by destroying them, and the court should have then shifted the burden of persuasion to the Governor's Office to establish that its closures and "destruction of records" were permissible pursuant to an exemption.

As we explained in Point I, to constitute a public record subject to disclosure under the Sunshine Law, the record must have been maintained by the agency at the time of a records request.  The uncontroverted evidence before the circuit court was that the messages Sansone was seeking did not exist, and were not capable of being recovered, at the time of Sansone's request.  The only admissible evidence in the summary judgment record was Mallery's expert testimony that a message sent using Confide is automatically deleted from the sender's phone after the sender opens a new message or after 48 hours, a message received using Confide is automatically deleted from the recipient's phone after the recipient reads it, and deleted messages are not recoverable using forensic methodology.  Sansone had the opportunity to present testimony from his own expert to controvert Mallery's testimony, but he chose not to do so.

19

Under the uncontroverted evidence, Sansone could not meet his initial burden of establishing that the Confide messages were public records subject to disclosure under the Sunshine Law; therefore, the burden of persuasion to show that the messages were exempt from disclosure never shifted to the Governor's Office. The court properly applied the burden of persuasion with regard to Sansone's request for the Confide messages.[8]  Point II is denied.

In Points III, V, and VI, Sansone alleges the circuit court erred in granting summary judgment in favor of the Governor's Office on three counts in his second amended petition because the court misinterpreted Section 610.010(6)'s definition of a public record to require that the record must have been retained.  Specifically, Sansone contends this "misinterpretation" of the definition of public record caused the court to erroneously grant summary judgment on his claim in Count VII that, in failing to produce a copy of all messages Greitens and the Governor's Office employees sent and received using Confide, the Governor's Office violated its duty under Section 610.023.2 to collect, maintain, and produce public records; his claim in Count V that the Governor's Office deliberately misapplied Section

---

[8] In this point, Sansone appears to challenge only the court's application of the burden of persuasion with regard to his claims concerning his request for the Confide messages, as those are the only records that he asserted were "destroyed."  To the extent that he challenges the court's application of the burden of persuasion with regard to his request for Greitens's personal cell phone number, we note that the court found that the phone number was "without question" a public record of a public governmental body under Section 610.010(6).  The burden of persuasion thus shifted to the Governor's Office, who asserted that the phone number was exempt from disclosure under Sections 610.021(4) and 407.1500.  Although the court ultimately determined as a matter of law that the phone number was exempt from disclosure based on a different statutory section, *see* Point IV, *infra*, the record indicates that the court properly applied the burden of persuasion with regard to this claim.

20

610.021(21)'s "terrorism exception" and Section 610.021(18)'s "hacker exception" in refusing to produce records showing the date that Greitens and anyone employed in the Governor's Office downloaded any automatic message destruction software; and his claim in Count VIII that there was a civil conspiracy between all defendants to violate the Sunshine Law by using automatic message destruction software.

As we discussed *supra*, the uncontroverted evidence was that the Confide messages did not exist at the time of Sansone's request. Likewise, while Mallery testified that he might "possibly" or "potentially" be able to find records showing the date that someone downloaded Confide and that Confide performs as any other ephemeral messaging application, this was not sufficient to establish that such records existed for Confide or any other ephemeral messaging application that Sansone alleged the Governor's Office was using. Again, Sansone had the opportunity to obtain and present testimony from his own expert to controvert Mallery's testimony and raise a genuine issue of material fact on these issues, but he chose not to do so. Because the uncontroverted evidence was that these records did not exist and, therefore, were not public records subject to disclosure under the Sunshine Law, the court properly granted summary judgment in favor of the Governor's Office on Sansone's Counts VII, V, and VIII. Points III, V, and VI are denied.

In Point IV, Sansone contends the circuit court erred in granting summary judgment in favor of the Governor's Office on Count VI, which was his claim that

the Governor's Office violated the Sunshine Law by failing to produce documents that showed Greitens's personal cell phone number. The Governor's Office answered Sansone's request for these records by asserting that the phone number was considered closed under Section 610.021(14), which allows public governmental bodies to close records that are "protected from disclosure by law." The Governor's Office then cited Section 407.1500, a provision in the Missouri Merchandising Practices Act, as the legal authority protecting Greitens's personal cell phone number from disclosure. In its summary judgment pleadings, the Governor's Office argued that Greitens's personal cell phone number was protected from disclosure under Section 407.1500.1(9)(b), because it was a "unique identification number . . . collected by a government body."

In its amended judgment, the court found that Section 407.1500.1(9)(b) does not protect a personal cell phone number "from disclosure by law"; rather, it merely provides that a person who fails to give notice of the unauthorized disclosure of such information due to a security breach may be subject to an action for civil monetary penalties brought by the attorney general. After finding that the specific exception to disclosure cited by the Governor's Office did not apply, the court considered whether other any other exceptions applied. The court determined that Section 610.021(13), which provides that a public governmental body may close "[i]ndividually identifiable personnel records . . . pertaining to employees," allowed the Governor's Office to close records of Greitens's personal cell phone number.

22

On appeal, Sansone first contends the circuit court erred in granting summary judgment on a basis not asserted by the Governor's Office in the summary judgment record. To support his argument, he relies on *Jones v. Housing Authority of Kansas City, Missouri*, 118 S.W.3d 669, 674 (Mo. App. 2003), and *Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 85 (Mo. App. 1999). *Jones* and *Mothershead* applied the principles that (1) the circuit court is confined to entering summary judgment only on the issues raised in the summary judgment motion, and (2) both the circuit court and this court are confined to considering only the factual record presented pursuant to Rule 74.04. *Jones*, 118 S.W.3d at 674 (finding the circuit court erred in ruling on the movant's right to attorney fees because it was not raised in the movant's summary judgment motion); *Mothershead*, 994 S.W.2d at 85 (stating that the circuit court's review and our review are limited to the evidence specified in the summary judgment motion and response).

The circuit court violated neither of these principles here. Whether the Governor's Office had the authority to close records of Greitens's personal cell phone number was the central issue in both parties' motions for summary judgment on Count VI, and in making its ruling, the court did not consider facts outside of the Rule 74.04 record. Rather, the court merely ruled that the Governor's Office's decision to close the records of Greitens's personal cell phone number was proper on a different legal basis than the Governor's Office asserted. Because we exercise *de novo* review, we may affirm it on that same basis or on

23

any other legal basis we deem appropriate. *Ferbet v. Hidden Valley Golf & Ski, Inc.*, 618 S.W.3d 596, 603 (Mo. App. 2020). Indeed, we may affirm summary judgment "on an entirely different basis than that posited at trial." *ITT*, 854 S.W.2d at 387-88. *See also Ferbet*, 618 S.W.3d at 603 (affirming summary judgment on a legal basis neither asserted in the summary judgment motion nor relied on by the circuit court). Sansone's contention that granting summary judgment on a different legal basis than that asserted in the summary judgment record constitutes reversible error is without merit.

Sansone next argues the court misapplied Section 610.021(13) in finding that the section allowed the Governor's Office to close records of Greitens's personal cell phone number. Section 610.021(13) gives a public governmental body the discretionary authority to close records relating to "[i]ndividually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries and lengths of service of officers and employees of public agencies once they are employed as such." This court recently explained that, in this section, the legislature has authorized public governmental bodies to choose to close individually identifiable personnel records except for employees' names, positions, salaries, and length of service "presumably in order to afford employees of public governmental bodies a modicum of privacy." *Show-Me Inst. v. Office of Admin.*, No. WD84561, 2022 WL 904703 at *6 (Mo. App. Mar. 29, 2022) (citing *State ex rel. Delmar Gardens N.*

24

*Operating, LLC v. Gaertner*, 239 S.W.3d 608, 611 (Mo. banc 2007), which we described as "acknowledging that 'Missouri recognizes a right of privacy in personnel records that should not be lightly disregarded or dismissed'" in determining the discoverability of such records).

"[I]t is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate." *Riley v. California*, 573 U.S. 373, 395 (2014). Releasing an employee's personal cell phone number—particularly an employee as prominent as the State's Governor—renders the employee susceptible to being harassed, or having his or her cell phone account hacked, which could result in hackers gaining access to a trove of highly personal information and using this information for fraudulent and/or criminal purposes.[9] Therefore, we find that an employee's personal cell phone number is an individually identifiable personnel record that falls within the "modicum of privacy" afforded by Section 610.021(13).

Sansone's contention that *Guyer v. City of Kirkwood*, 38 S.W.3d 412 (Mo. banc 2001), held that Section 610.021(13)'s exception is limited to records relating to the "hiring, firing, or disciplining . . . of a particular employee" is erroneous. In

---

[9] *See, e.g.,* Brian X. Chen, *I Shared My Phone Number. I Learned I Shouldn't Have*, N.Y. TIMES (Aug. 15, 2019), https://www.nytimes.com/2019/08/15/technology/personaltech/i-shared-my-phone-number-i-learned-i-shouldnt-have.html; Henry Kenyon, *Cell Phone Account Fraud, A New Threat to Individuals' Private Data*, CQ ROLL CALL WASHINGTON DATA PRIVACY BRIEFING (Aug. 2, 2018).

considering whether any of Section 610.021's exceptions to disclosure might apply, the Court in *Guyer* determined that, because internal police investigation reports related to the performance or merit of individual employees, they appeared to fall under both Section 610.021(3)'s exception for records relating to the "hiring, firing, disciplining, or promoting of particular employees," *and* Section 610.021(13)'s exception for "[i]ndividually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment." *Id.* at 414. The Court did not state that Section 610.021(13)'s exception for "individually identifiable personnel records" is limited to records described in Section 610.021(3)'s exception. Additionally, Sansone's reliance on *Oregon County R-IV School District v. LeMon*, 739 S.W.2d 553, 560 (Mo. App. 1987), a case that held that students' names, addresses, and telephone numbers were not protected from disclosure, is not persuasive, as that case does not appear to involve cell phone numbers.[10] Moreover, in a slightly more recent case than *LeMon*, this court stated that a public governmental agency *did* have the authority to close the telephone numbers of state employees to prevent the use of such information for nefarious purposes. In *Pulitzer Publishing Company v. Missouri State Employees' Retirement System*, 927 S.W.2d 477, 483 (Mo. App.

---

[10] Even if the phone numbers in *LeMon* were for mobile phones, the mobile phones at that time were not "smartphones" that allowed the user to do more than make and receive phone calls. *See* Steven Tweedie, *The World's First Smartphone, Simon, Was Created 15 Years Before the iPhone*, BUSINESS INSIDER, (June 14, 2015), https://www.businessinsider.com/worlds-first-smartphone-simon-launched-before-iphone-2015-6 (noting that "the first true smartphone" debuted in 1992).

1996), we held that the name, position, pension amount, and length of service of members who had been or were receiving benefits were required to be disclosed per Section 610.021(13)'s exception to the exemption from disclosure, but the Missouri State Employees' Retirement System could still close "all other individually identifiable personnel information, including but not limited to, the addresses and telephone numbers of members, thereby minimizing the risk of exploitation of vulnerable, elderly retirees by unscrupulous elements who might request blanket information for inappropriate purposes."

Because Section 610.021(13) authorized the Governor's Office to close records of Greitens's personal cell phone number, the circuit court did not err in granting summary judgment in favor of the Governor's Office on Sansone's Count VI.[11]  Point IV is denied.

In Point VII, Sansone contends the circuit court erred in granting summary judgment in favor of the Governor's Office on Count III, which was his claim that the Governor's Office's response to his records request violated Section 610.023.3. Section 610.023.3 provides, in pertinent part:

---

[11] Sansone also argues that the court erred deciding that the record was properly closed on a different basis than that asserted by the Governor's Office in its response to his request.  We agree with the circuit court that, before it could decide whether the Governor's Office knowingly or purposely violated the Sunshine Law by failing to produce the record and was entitled to relief under Section 610.027, it had to first find that the Governor's Office wrongfully withheld the record.  Even though the Governor's Office may have withheld the record for the wrong reason, it did not, as a matter of law, wrongfully withhold the record because it had the authority to do so under Section 610.010(13); therefore, Sansone is not entitled to relief under Section 610.027.

27

Each request for access to a public record shall be acted upon as soon as possible, but in no event later than the end of the third business day following the date the request is received by the custodian of records of a public governmental body. . . . *If access to the public record is not granted immediately, the custodian shall give a detailed explanation of the cause for further delay* and the place and earliest time and date that the record will be available for inspection. This period for document production may exceed three days for reasonable cause.

(Emphasis added.) The Governor's Office responded to Sansone's December 20, 2017 request within three business days. In its response, the Governor's Office stated, "We are in the process of reviewing parts 1-5 of your request, and we anticipate that we will be able to provide a response or a time and cost estimate (if applicable) for records you have requested in no more than twenty business days. We will contact you at that time." Sansone argues this response was deficient because the Governor's Office failed to include a detailed and reasonable explanation for the delay.

The Governor's Office's stated reason for the delay was that it was "in the process of reviewing" all of Sansone's five requests for records. Ultimately, the only public record in existence that Sansone requested and did not receive access to within three business days was Greitens's personal cell phone number. The record indicates that Madden had never before received a Sunshine Law request for an employee's personal cell phone number, and she sent the request to the general counsel's office. Given that (1) this was the first time that Madden had received such a request, (2) the disclosure of a public governmental agency

28

employee's personal cell phone number in response to a Sunshine Law request is an issue of first impression in Missouri, and (3) Sansone's requests were made right before the Christmas and New Year's holidays, when employees with information relevant to Sansone's requests may have been on vacation, that the Governor's Office needed more than three business days and up to twenty business days to review his requests was reasonable. The circuit court did not err in granting summary judgment in favor of the Governor's Office on Sansone's Count III. Point VII is denied.

In Point VIII, Sansone contends the circuit court erred in granting summary judgment in favor of the Governor's Office on his request in Count I for a preliminary and permanent injunction forbidding the Governor's Office from using Confide and similar ephemeral messaging applications. He argues that he was entitled to such relief under Chapters 610 and 109.

Sansone is correct that Section 610.027.1 authorizes private citizens to seek judicial enforcement of the Sunshine Law's provisions, and Section 610.030 authorizes the circuit court to issue injunctions to do so. As we have already noted, however, the Sunshine Law requires disclosure of only public records of which the governmental agency retains possession. The uncontroverted evidence was that messages sent via Confide and similar ephemeral messaging applications are not maintained, and, therefore, are not public records required to be disclosed under the Sunshine Law. Therefore, Sansone was not entitled to an injunction under Sections 610.027.1 and 610.030.

29

Sansone next argues that he was entitled to injunctive relief under Chapter 109. Unlike Chapter 610, Chapter 109 contains no language authorizing private citizens to seek judicial enforcement of its provisions. Nevertheless, Sansone contends that he can seek injunctive relief to enforce Chapter 109 based on *Egan v. St. Anthony's Medical Center*, 244 S.W.3d 169, 173 (Mo. banc 2008). In *Egan*, the Supreme Court held that, while there is generally "no private right of action to enforce a statute or regulation," a surgeon could seek the "less intrusive remedy" of injunctive relief to compel a hospital to follow its own bylaws in the disciplinary proceeding against him because a regulation required the hospital to follow its bylaws in such proceedings. *Id*.

Sansone asserts that he is entitled "to seek injunctive relief to prevent the ongoing and unlawful destruction of public records." He does not state, however, which provision of Chapter 109 he is attempting to enforce by way of a private right of action for injunctive relief forbidding the Governor's Office from using Confide and similar ephemeral messaging applications. The only specific sections of Chapter 109 that Sansone mentions in this point are Section 109.120, which sets forth the standards and cost of records reproduced by photographic, video, or electronic process, and Section 109.180, which states that public records are open to inspection and provides for the impeachment of and criminal penalties for officials who refuse to permit inspection. Sansone cites these sections only to note that neither statute provides a private cause of action for damages, but then adds that "he could still seek injunctive relief under that section [sic]." He does

30

not explain how the Governor's Office's use of Confide and similar ephemeral messaging applications violates either of these sections.[12]

"While de novo review of an appellate court is broad, such review is not a license for the reviewing court to become an advocate for the appellant by conducting its own research and crafting its own argument on behalf of the appellant." *DLJ Mortg. Cap., Inc. v. Creative Client Recovery, Inc.,* 637 S.W.3d 612, 619 (Mo. App. 2021). Because Sansone fails to support his contention that he is entitled to seek injunctive relief under Chapter 109 with relevant authority or argument beyond conclusory statements, we decline to consider the issue on appeal. *Martin v. Div. of Emp. Sec.*, 384 S.W.3d 378, 384 (Mo. App. 2012). Point VIII is denied.

In Point IX, Sansone contends the circuit court erred in staying discovery related to his Counts I, III, IV, VI, VII, and VIII. The circuit court has "broad discretion in administering rules of discovery," and we will not disturb its decision unless we find an abuse of discretion. *State ex rel. Delmar Gardens N. Operating, LLC*, 239 S.W.3d at 610. An abuse of discretion occurs only when a ruling "is clearly against the logic of the circumstances then before the court and is so

---

[12] In his second amended petition, Sansone asserted that he was entitled to an injunction to enforce Section 109.270, which provides:

> All records made or received by or under the authority of or coming into the custody, control or possession of state or local officials in the course of their public duties are the property of the state or local government and shall not be mutilated, destroyed, transferred, removed or otherwise damaged or disposed of, in whole or in part, except as provided by law.

Sansone does not cite Section 109.270 or assert this argument on appeal; therefore, we consider it abandoned. *Geiler v. Liberty Ins. Corp.,* 621 S.W.3d 536, 548 (Mo. App. 2021).

arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Matysyuk v. Pantyukhin*, 595 S.W.3d 543, 547 (Mo. App. 2020) (quoting *Holm v. Wells Fargo Home Mortg., Inc.*, 514 S.W.3d 590, 596 (Mo. banc 2017)).

> Rule 56.01(b)(1) prescribes the scope of discovery in general:
>
> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter, *provided the discovery is proportional to the needs of the case considering the totality of the circumstances, including but not limited to, the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit.*

(Emphasis added.)

In this case, the court decided that the threshold issue of whether the requested records were public records subject to disclosure under the Sunshine Law should be determined first, as it would have an effect on what discovery was probative to the claims Sansone raised in his second amended petition. The court accordingly ordered that discovery start with a forensic evaluation of the retention characteristics of the Confide application. The court ordered the Governor's Office to obtain, at its cost, an expert forensic examination. The Governor's Office's

expert, Mallery, opined that the records Sansone was seeking were not retainable. The court then afforded Sansone not only the opportunity to depose Mallery, which Sansone did, but also the opportunity to obtain his own expert forensic examination to controvert Mallery's opinions, which Sansone chose not to do.

Sansone's voluntary decision to forgo his opportunity for discovery on the threshold issue of whether the records he was requesting were maintained or recoverable by the Governor's Office rendered Mallery's opinion uncontroverted, leaving no genuine issue of material fact that, with the exception of Greitens's personal cell phone number, the records Sansone was seeking were not public records subject to disclosure under the Sunshine Law. Under the circumstances, the court's decision that no further discovery was necessary to resolve Sansone's claims in Count IV for failing to produce records showing the date that Greitens and anyone employed in the Governor's Office downloaded Confide on their cell phones, Count VII for failing to maintain and produce messages sent or received using Confide, and Count VIII for a civil conspiracy between all defendants to violate the Sunshine Law by using automatic message destruction software, does not shock our sense of justice or indicate a lack of careful consideration.

Likewise, the court's decision to stay discovery on his claims in Count I for injunctive relief prohibiting the Governor and all Governor's Office employees from using Confide or any other automatic message destruction software, Count III for failing to provide a detailed and reasonable explanation of the cause of the delay in producing the records within three days, and Count VI for refusing to

33

produce records showing Greitens's personal cell phone number, does not shock our sense of justice or indicate a lack of careful consideration. These claims were all resolved on legal grounds, and no evidence obtained through discovery would have had any effect on their resolution.

The circuit court did not abuse its discretion in staying further discovery on Counts IV, VII, and VIII and in staying discovery on Counts I, III, and VI. Point IX is denied.

### CONCLUSION

The judgment is affirmed.

_____
**LISA WHITE HARDWICK, JUDGE**

**ALL CONCUR.**

34